NEW YORK PRACTICE REPORTS. 491

People *ex rel.* Green agt. Common Council of Syracuse.

# SUPREME COURT.

The People *ex re..* John A. Green agt. The Common Council of the City of Syracuse.

The common council of the city of Syracuse, after the appointment of commissioners to assess the damages to be awarded to the owners of the lands to be taken as a *public street,* and after the award has been made and confirmed by the lapse of time in which an appeal may be taken, have no authority to *discontinue the proceedings.*

If the common council neglect to proceed and open the street, the court may grant a *mandamus* to compel them to proceed, when applied to by any person *interested in the proposed improvement.*

And a person who has an interest in the proceedings, to enable him to recover the *damages awarded to him* by the commissioners, has such an interest as authorizes him to make the application.

And a *mandamus* will be granted in such case, where " the final determination of all the proceedings," in the way pointed out by the city charter has not been had, which is required to create the liability of the city to pay the award.

*Syracuse Special Term, February,* 1861.
Motion by the relator for a peremptory mandamus.

Hunt & Fryer, *attorneys, and*
D. Pratt, *counsel for relator.*
Barrett & Leavenworth, *for defendants.*

Morgan, Justice. From the facts stated in the writ of alternative mandamus, and admitted by the answer, together with the evidence taken on the trial, it appears that the common council of the city of Syracuse, in pursuance of the powers vested in them by the charter, caused to be surveyed the proposed street in question, and caused permanent monuments to be set, showing the lines thereof, and a map to be made of the same, which was filed in the city clerk's office, and a copy thereof was also filed in the county clerk's office, as provided for in title 8, § 1. The common council then declared by resolution their intention to take and appropriate the property included within the lines of

the proposed street, and published and served the notices as required by the city charter. Application was made to the county court for the appointment of three commissioners, in pursuance of notice to the property owners, and that court duly appointed such commissioners " to ascertain and report the just compensation to be paid to the person or persons owning or having an interest in the said property."

The commissioners thus appointed proceeded under § 2, title 8 of the city charter, to ascertain and award to the respective owners of property to be taken, and to all persons and corporations interested therein, such damages therefor, (deducting the benefits to the adjoining lands) as in their opinion would be a just compensation to them respectively; and this report was duly returned to the common council. No appeal was taken to the county court by any person interested in the lands, or by the common council, within the time prescribed by § 3 of article 8th of the city charter.

By § 4 of the same article it is provided that " in case there shall be no appeal from the report of the commissioners, the common council shall direct the commissioners making the award to assess the amount awarded for damages, with commissioners' fees, specifying the aggregate amount of the same. The commissioners shall proceed to assess such amount upon the property benefited by such improvement, in a just and equitable manner, as near as may be in proportion to the benefits received. Such assessment shall be made in the same manner as the assessment for building sewers, except that such commissioners shall direct such part of said expenses to be assessed upon the city, and such part locally, as they shall deem just."

And by § 6 : " Immediately after the final determination of all proceedings in which any award shall be made, the common council shall cause to be paid or tendered to the respective owners the amount awarded to each respect-

People *ex rel.* Green agt. Common Council of Syracuse.

ively. · Upon such payment or tender . . . the fee of the land shall be vested in the city."

It appears by the case, that after the time for appealing from the report of the commissioners had expired, the common council, in pursuance of § 4, passed a resolution directing the commissioners to assess the damages. This resolution was vetoed by the mayor, and failed to command a majority sufficiently large to pass it against the veto of the mayor. The damages awarded to the relator for his property within the lines of the proposed street amounted to $4,200. He, therefore, claims that the common council are required by the charter to give the necessary directions to the commissioners to assess the damages, and that this court ought to interfere by mandamus to compel that body to perform their duty.

Two questions have been argued before me, which it will be necessary to answer: first, whether the common council, after proceeding thus far, can abandon or discontinue their proceedings? and, secondly, whether the relator is in a position to entitle him to sue out a mandamus in this case?

I do not think the peremptory language in § 4 necessarily determines the question. The word *shall*, when used in a statute, is frequently construed as equivalent to the word *may*, when addressed to a public body, or to private individuals.

Doubtless the common council may abandon their proceedings to open a public highway—if they do so before the public or private individuals have acquired any rights which could be injured by such abandonment.

And while the common council have any discretion, to proceed or to discontinue, this court will not interfere to overrule their proceedings. It is only when the common council neglect a plain duty enjoined by law, that this court undertakes to compel them to proceed, by *mandamus*. The first question is, whether the common council can now consistent with the rules of law, neglect or abandon or discon-

tinue the further proceedings, which the charter imposes upon them, to open the road in question.

A similar question came before the supreme court *in the matter of the petition of the Mayor, Aldermen and Commonality of the city of New York, to discontinue proceedings for opening Beekman street in that city,* (20 *John. R.,* 269.) Commissioners had been appointed under the statute, (2 *N. R. L.,* 408, §§ 177 *and* 178,) by the supreme court upon the application of the petitioners, called commissioners of estimate and assessment, " to proceed and make a just and equitable estimate and assessment of the loss and damage . . . to the respective owners" of the lands required for the purpose of opening the street. " And upon the coming in of the said report . . . the court" was required " by rule or order after hearing any matter which might be alleged against the same, either to confirm the said report or refer the same to the said commissioners for revisal and correction, or to new commissioners." The report when completed and confirmed was to be " final and conclusive as well upon the mayor, aldermen and commonalty of the city of New York as upon the owners" of the lands.

" *And on such final confirmation of such report by the said court, the said mayor, aldermen and commonalty, became seized in fee,*" of the said lands, and might " immediately or at any time thereafter take possession of the same."

The corporation, within four calendar months after the confirmation of the report, were required to pay to the respective owners " the respective sum or sums so estimated and reported in their favor respectively," and in case of neglect the owners could sue the corporation and recover the same with lawful interest. The report of the commissioners of estimate and assessment was presented to the court, and after objections, the court refused to confirm it, and referred it to three new commissioners, *who had not made their report when the application was made to discontinue the proceedings.* The reason given for the applica-

tion, was that another street upon new lines, would obviate some objections and "materially add to the accommodation of the market." The application was opposed by persons owning lands fronting on the street as at first proposed, upon two grounds; "*first, that the court had no power to order a discontinuance of the proceedings instituted and going on*, under the facts of the case; and secondly, admitting the court had the power, it ought not to be exercised." The court decided that it had no power to grant the application. Although the court, in the case of *Dean street*, (18 *John. R.*, 506,) gave leave to discontinue, SPENCER, Ch. J., says of that case, "we considered the proceedings in that case the same as though no commissioners had been appointed, and gave leave to discontinue." "It will be observed that the statute gives to the corporation the exclusive right of applying for the appointment of commissioners, and if they decline making the application the court may consider the proceedings terminated. In the present case the commissioners have assumed the trust and have nearly completed it." The same learned chief justice, after adverting to the fact that several persons had made purchases of lots, which would be materially depreciated in value if the proceedings are discontinued, says in conclusion, "we assume no control over the corporation, upon any subject within their legitimate discretion. They have the primary and exclusive right to decide upon alterations in the streets, as they see fit; but having decided, and this court having acted upon that decision, by appointing commissioners, who have entered upon their duties, *it is not competent to the corporation to resume the subject and vacate their act.*"

It will be seen that the court in the above case, denied the application to discontinue the proceedings, although no title had vested in the city to the lands through which the street was located. The report of the commissioners

of estimate and assessment, had not been confirmed, and until confirmation, no title passed to the city.

Under the charter of the city of Syracuse, the title vests in the city after payment or tender of the award. The proceedings are in as forward a state as were the proceedings for opening Beekman street, for at the time of the application in that case, the commissioners had not even made their final report. It is difficult to discover upon what ground any difference in principle can be maintained between the two cases, unless it grows out of the circumstance that the corporation of New York had no further control of the matter, after commissioners of estimate and assessment had been appointed. The supreme court acted upon the report of the commissioners, and on confirmation of the report, the city became seized of the lands, under the Syracuse charter; the county court, after appointing commissioners, has no further control of the proceedings. The report is made to the common council, and that body is required to conclude them. If, however, it is conceded that the supreme court *had no authority* in the *Beekman street* case, to allow the corporation to discontinue proceedings, it is impossible to maintain that the common council of the city of Syracuse has any such power. The common council have no more power in this case, than the supreme court and corporation of New York possessed in the *Beekman street* case. If both united, could not legally terminate the proceedings in that case, it is difficult to see how the common council can discontinue the proceedings in this case.

It must also be admitted that if the common council cannot discontinue the proceedings to open the street in question, it is *their duty* to *continue them*, and that a *mandamus* would be an appropriate remedy to' compel that body to perform the duty which the law enjoins upon them. (*People* agt. *Collins*, 19 *W. R.*, 56.)

But it is claimed that notwithstanding what is said by the court in the *Beekman street* case, the later decisions of

the supreme court have materially modified, if they have not entirely overthrown the doctrine of that case, I will therefore examine some of these late cases, and if I find that the authority of that case is overruled, I shall not hesitate to follow them.

For if the city can discontinue their proceedings, there is good reason to believe that it might be done with advantage to the public.

There is a case in 6 *John. Ch. R.*, 46, (*Corporation of New York* agt. *Mapes*) in which the chancellor discusses the authority of the corporation to discontinue proceedings, under the statutes above cited, (2 *N. R. L.*, 342, 408,) and it would appear that in his opinion it was too late to discontinue, *after* commissioners of estimate and assessment had been appointed; and he expresses the opinion with caution, that the corporation may discontinue even *before* commissioners are appointed. This is, however, a mere dictum, but it shows what were the views of the chancellor, and is entitled to considerable weight in the discussion of the question at issue in this case.

The case of *The People* agt. *The Supervisors of St. Lawrence county*, (5 *Cow. R.*, 293,) is important to show when a mandamus will issue, but the supervisors had nothing to do with the question of laying out the road, and the commissioners of highways did not apply to discontinue or propose to interfere to arrest the proceedings; the point was not taken or decided as to the power of the commissioners to vacate their proceedings. Nor does the case, *exparte Rogers*, (7 *Cow. R.*, 526,) have any importance, except to show the propriety of granting a mandamus to compel the canal commissioners to pay damages for overflowing lands after a valid appraisal by the proper officers.

The case of *Hookers* agt. *The Trustees of the village of Rochester*, (1 *W. R.*, 53,) so far from questioning the authority of the decision in 20 *John. R.*, 269, approves of the principle established in that case.

Assessors were appointed, who made an assessment upon the owners of the lands intended to be benefited by the opening of the street, and the same were reported to the board of trustees.   The land was never taken possession of or appropriated by the board of trustees as a street.   On the coming in of the report, the board passed a resolution discontinuing the proceedings.

The plaintiff brought his suit to recover the sum of $200, awarded to him for damages, and recovered.   The court held that the trustees had no right to discontinue, upon the authority of the case in 20 *J. R.*, 269.   But it will be seen that the trustees had taken one step then, which the common council of the city of Syracuse have not taken in this case.

They had appointed commissioners to assess the sums allowed as damages upon the persons benefited by the proposed improvement, and their report had been made—the very thing which this suit is instituted to compel in this case.

Under the Rochester village charter (*Laws of* 1826, *p.* 126, § 25) the board of trustees could not take the land " until after payment or tender, or refusal of the money " awarded for damages.   No title passed until such payment, tender or refusal.   This case is an authority for the proposition, that after the assessment of damages upon the owners benefited by the improvement, an action lies against the corporation to recover the damages awarded to the proprietor of houses and lots, included in the lands of the proposed highway.   But it certainly disproves the proposition that the corporation can discontinue *at any time* before the title is perfected, or the lands actually appropriated by the city.   On the contrary, it tends to establish another proposition maintained by the counsel of the corporation, that after the award of the damages an action lies against the city to recover the sum awarded, without waiting till the damages are assessed and collected.   This

must, however, depend upon other provisions of the city charter.

I can find no case which modifies or questions the authority of the case in 20 *J. R.*, 269; but so far as the later cases have come to my knowledge, they approve of and affirm the principle enunciated by chief justice SPENCER in that case. I conclude, therefore, that the common council, after the appointment of commissioners to assess the damages to be awarded to the owners of the lands to be taken as a public street, and after the award has been made and confirmed by the lapse of time, in which an appeal may be taken, have no authority to discontinue the proceedings.

If they neglect to proceed and open the street, the court, without doubt, may grant a mandamus to compel them to proceed, when applied to by any person interested in the proposed improvement.

The application in this case is in behalf of Mr. Green, who does not claim any interest in the proposed improvement, except that he has an interest in the proceedings, so as to enable him to recover the damages awarded to him by the commissioners. He says, truly, that the common council may proceed hereafter and take his lands by complying with the terms of the city charter. It may be next week and it may be next year. The city has done everything necessary to be done to preclude the relator Mr. Green, from challenging the right of the common council to appropriate his lands for the proposed improvement. If he lets his buildings, it must be subject to the right to turn his tenant out of doors. He cannot sell his property, because it is subject to be taken into the street by the common council. Doubtless the relator has a right to call upon the common council either to take his property and pay his damages, or to abandon the proceedings. We have seen that the common council cannot abandon the street. It is, therefore, their duty to proceed, but it does not follow that

the relator is entitled to a mandamus, merely to obtain his damages.

If he can sue the city and recover the damages, then he has another remedy, and this court will not grant a mandamus on his motion.

I will not undertake to discuss and reconcile the several cases which have been cited to show when the court will allow, and when it will withhold, the writ of mandamus.

So far as the question is involved in this case, I will say, that if the city is not bound to pay the award to Mr. Green until the amount is collected, in pursuance of the city charter, then a mandamus ought to issue to compel the common council to direct the commissioners to make the necessary assessment, so that the relator may obtain his damages according to the provisions of the charter.

But if the damages are due and payable, independent of the further proceedings to open the street, then the relator, Mr. Green, has no interest in these further proceedings, and his remedy against the city would be perfect without them.

By § 6, title 8 of the city charter, it is provided that " immediately after the *final determination* of all proceedings in which any award shall have been made, the common council shall cause to be paid or tendered to the respective owners the amount awarded to each respectively."

I understood that the payment is to come out of the sum collected of the persons benefited by the proposed improvement, and from a general tax upon the city. (*Title* 8, § 4.)

What is meant by " *the final determination of all proceedings in which any award shall have been made ?*" For it is not till then that the common council is required to cause the award to be paid. It is not till this *final determination*, that the city is liable to be called upon to pay the award. I think the direction to the commissioners to make the assessment, is a part of the final proceeding to be determined. And I think the *final determination* must be con-

strued to include not only the direction to the commissioners, but the collection of the local and city tax, as among the proceedings to be taken before the award is due and payable within the meaning of section six, of title eight of the city charter. There are proceedings to be taken, before the city is put in possession of funds, applicable to the payment of these damages.

If this construction is the right one, then the relator cannot recover his damages by suit against the city until the common council proceed and direct the commissioners to assess the damages. And he has an interest in the further proceedings, which the court will recognize and protect.

It would be unjust to parties where lands are to be taken for a public street, that they should be required to wait the pleasure of the common council for payment of their damages, while the common council is in duty required to proceed at once and bring matters to a *final determination.* If the common council may wait one month, they may wait one year and longer; and thus indirectly, discontinue proceedings by delay, which they could not do directly by resolutions.

It is said, however, that the relator has his remedy against the aldermen, in an action on the case for neglect of duty. But there is a great difficulty in acceding to this proposition. The common council, act upon the question as a corporation. Although the *mayor* and *common council* are made *ex-officio* commissioners of highways, (*title* 4, §9,) the common council in their corporate capacity, are required to pass the necessary resolutions for the appointment of commissioners as well to award as to assess the damages in this case. As a common council they are not liable to an action. A judgment cannot be made available against the *common council,* but only against the mayor and aldermen in their individual capacities, or against the " city of Syracuse" as a corporation. There is then, no remedy

against the "common council," as such except by man-
damus. And it is much better to sue out a writ of man-
damus to compel them to perform their duties in a legal
manner, than to subject the members to be harrassed with
actions for neglect of duty. In *McCullough* agt. *The Mayor
and Common Council of Brooklyn*, to recover the amount
awarded to an owner of lands taken for a public street,
(23 *W. R.*, 458,) the defendants were a corporation and
not merely a branch of it, and were sued as such. Their
neglect to assess and collect the damages awarded to the
owners of lands taken for a public street, was the neglect
of the city corporation, and not of a branch of it. Judge
BRONSON held that the duty and obligation rested upon the
"corporation" of "putting the necessary machinery in
motion according to the requirements of the statute;" and,
although he thought an action on the case would lie against
the defendants for neglecting their duty, he declares that
"they may be compelled by mandamus to exercise their
functions according to law." If, therefore, it should be
conceded that the "city of Syracuse" is liable in an action.
on the case for the neglect of the *common council* to put the
*necessary machinery in motion* according to the require-
ments of the city charter, it would be no reason for refus-
ing a mandamus, according to the authority of that case.

But if I have not mistaken the relation of the "common
council" to "the city of Syracuse," that body bears a close
resemblance to the relation which the board of supervisors
bears to the county.

And in the case of the *People* agt. *The Supervisors of the
county of Columbia*, (10 *W. R.*, 363,) it was held that
"when it is made the duty of the supervisors of a county
to raise a certain sum of money, the remedy is by man-
damus against the supervisors, and not by action against
the county. Judge SAVAGE says in that case: "It is a
duty imposed upon those officers which should be performed
by them; but for their neglect the county in its corporate

capacity should not be punished." So here it is a duty imposed upon the common council of the city of Syracuse to " put the machinery in motion," and for their neglect the city should not be punished.

Judge SAVAGE added in that case: " Nor does any liability attach to the county to pay the money in any other way than that pointed out by the statute."

I am of opinion that no liability attaches to the city of Syracuse in this case, to pay this award, until " the final determination of all the proceedings " in the way pointed out by the city charter.

The result is, that a peremptory mandamus must issue to the common council, requiring that body to proceed and direct the commissioners making the award, to assess the amount awarded for damages, as required by section four, title eighth of the city charter.