## PEOPLE *ex rel.* MARKET COMMISSIONERS *v.* COMMON COUNCIL OF NEW YORK.

### December, 1866.

Affirming 1 *Abb. Pr. N. S.* 318; S. C., 45 *Barb.* 473, and 30 *How. Pr.* 327.

A statute (*L.* 1865, c. 180, p. 120) authorizing and directing a municipal corporation to create a public fund or stock for the building of a market, and also requiring the comptroller of the corporation to issue the stock on the requirement of the commissioners, does not require the comptroller to issue the stock until the legislative department of the corporation have made an ordinance creating the stock.

When a corporation is required to do a particular act, a mandamus to compel performance is properly addressed to that organ of the corporation by which, from its nature, it must be performed. If the adoption of an ordinance is necessary, the writ is properly addressed to the common council.

*It seems,* that where a mandamus fails of its purpose by reason of a stay of proceedings on appeal, the appellate court cannot, on affirming the allowance of the writ, award an *alias,* but the proper practice is for the relator to apply in the court below for an *alias* on notice to the respondent.

Benjamin F. Manierre applied to the supreme court for a mandamus requiring the common council of the city of New York to enact an ordinance providing for the creation of a fund or stock for the building of a market.

The affidavit on which the application was founded recited the substance of the act of March 15, 1865, in relation to a public market in the city of New York (by which act three commissioners were appointed for the erection of a market), and that they had taken possession and determined the plans, advertised for proposals, and were incurring expenses. That the

common council of the city, although they had been requested to make the necessary provision for issuing market stock provided for by the act under which they were appointed, had never done so; and deponent was informed that it was the intention of the common council not to provide for the issue of the stock; and that by their neglect the commissioners were hindered and prevented from proceeding with the work.

The language of section 5 and successive sections, so far as material to the case, is as follows: "The mayor, aldermen, and common council of the city of New York are hereby authorized and directed to create a public fund or stock, to be denominated 'Market Stock,' for the amount of $75,000" [here followed particulars as to the date, interest, time of redemption], "and the said mayor and aldermen being hereby authorized and directed to pledge the faith of the city and county, and the same is hereby specifically pledged for the redemption of the said stock, and the several parts thereof, when the same shall become due and redeemable under the provisions of this section, by tax upon the estates, real and personal, in the city of New York subject to taxation." § 5.

"The comptroller of the said city of New York shall, within thirty days after being required in writing by said commissioners so to do, prepare and issue the said stock specified in the preceding section, for the full amount of $75,000, and offer the same for sale" [here followed particulars as to the advertisement before the sale, and a direction that the proceeds be deposited with the chamberlain of the city, to the credit of the market commissioners]. "The city comptroller shall determine what shall be the nominal value of said stock per share, and of what number of shares the same shall consist, but he shall not be authorized to issue, sell or dispose of any of the same, at a less rate than its par value." § 6.

The court, at special term, having granted a mandamus, the defendant appealed.

*The supreme court* affirmed the order on substantially the same grounds as those assigned in the following opinion. Reported in 1 *Abb. Pr. N. S.* 18; S. C., 45 *Barb.* 473. The defendants appealed.

People *ex rel.* Market Commissioners *v.* Common Council of N. Y.

*Cephas Brainerd* and *James S. Stearns*, for the relators, respondents;—Cited Lowber's Case, 7 *Abb. Pr.* 158;* *Proceedings of Aldermen & Councilmen*, Aug. 16, 1856; Nov. 6, 1856; Feb. 18, 1857; Queen, &c. *v.* Commissioners of Navigation, &c., 8 *A. & E.* 901; Queen, &c. *v.* Vestrymen of St. Margaret's, *Id.* 889; People *v.* Draper, 15 *N. Y.* 532; Sill *v.* Village of Corning, *Id.* 297; Darlington *v.* Mayor, &c. of N. Y., 28 *How. Pr.* 352; People *v.* Pinckney, 32 *N. Y.* 377; People *v.* Batchelor, 22 *Id.* 128; Commonwealth *ex rel.* Hamilton *v.* Select & Common Councils of Pittsburgh, 34 *Penn.* 496; McCullough *v.* Mayor of Brooklyn, 23 *Wend.* 458;† People *v.* Common Council of Syracuse, 20 *How. Pr.* 491; *Archb. Pr. of the Crown Office*, 239–250; *Tapp. on Mand.* (*Law Lib. N. S.* 142) 94; *Amended Charter, Sess L.* 1857, p. 874, § 5; 877–8, c. 446, §§ 15–18; People *v.* Common Council of Brooklyn, 22 *Barb.* 404; School District No. 1 *v.* School District No. 2, 3 *Wis.* 65; State, &c. *ex rel.* Ordway *v.* Smith, Mayor, &c., 11 *Id.* 65; *Archb. Pr. of the Crown Office*, 212, 213, 260, and cases cited; R. *v.* Mayor of Abingdon, 2 *Salk.* 699; R. *v.* Mayor of Norwich, 1 *Stra.* 55; R. *v.* Vice Chan. of Cambridge, 3 *Burr.* 1647, 1659; King *v.* Smith, 2 *M. & S.* 583, per Ld. ELLENBOROUGH, 598, 599; Marbury *v.* Madison, 1 *Cranch*, 137, 170; People, &c. *v.* Throop, 12 *Wend.* 183, 187; *Tapp. on Mand.* 290 (60 *Law Lib. N. S.* 399); *Id.* 314, 360; Queen *v.* Excise Com., 6 *Q. B.* 975 (note b.) 981; *L.* 1853, pp. 1135, 1136, c. 603, § 5; *Valentine Laws relating to the City*, pp. 269, 270, 271.

*Richard O'Gorman*, for defendants, appellants;—Cited People *ex rel.* Green *v.* Wood, 35 *Barb.* 653, 659, 661; S. C., 13 *Abb. Pr.* 374; 22 *How. Pr.* 286;‡ Clarke *v.* City of Rochester, 5 *Abb. Pr.* 115; Lowber *v.* Mayor, &c. of N. Y., *Id.* 329, 336; Wyatt *v.* Benson, 4 *Id.* 186; S. C., 23 *Barb.* 327.§

* As to injunction against legislation by municipal corporation; followed in 9 *N. Y.* (5 *Seld.*) 253, 254.

† As to compelling corporations and ministerial officers by *mandamus*, to exercise their functions, see 11 *N. Y.* (1 *Kern.*) 563; 2 *Barb.* 397; 49 *Id.* 259.

‡ Distinguished in 36 *Barb.* 59.

§ As to power of trustees;—see 14 *Abb. Pr.* 424, 425.

BY THE COURT.—WRIGHT, J.—The appellants urge a reversal of the order in question on two grounds: 1st. That no action on the part of the common council is requisite or necessary to the creation of the stock; the act itself, as is alleged, in terms, providing for and creating it; and, 2nd. That the common council owe no duty to the relators, because, by the language of the act, the duty of creating the fund or stock is imposed upon the corporation, and not upon the common council, whose members are merely the agents and servants of the corporation.

In my opinion, neither of these objections has scarcely the merit of plausibility. In the one, it is urged, in substance, that the legislature has *created* the stock, and all the commissioners have to do is to demand of the comptroller a compliance with the requirements of the sixth section of the act, which makes it his duty to issue the stock within thirty days after the same is demanded by the commissioners; and, in the other, that the duty of *creating* the stock is imposed upon the corporation, and the writ of mandamus should have been directed to that body, and not to the common council, which is only one of its constituent parts.

1. There is no color for any argument that this is a legislative enactment creating stock, and that all the commissioners have to do is to demand of the comptroller to issue it. The language of section 5 of the statute is: " The mayor, alderman and commonalty of the city of New York are hereby authorized and directed to create a public fund or stock, to be denominated 'market stock,' for the amount of seventy-five thousand dollars," &c. This is a legislative mandate to the corporation, to create the stock (the legislature not assuming to create it).; and it is the stock thus created that the comptroller is to issue, on the requirement of the commissioners; a stock created as indicated in the section, and not by an act of the legislature. It is plain, upon a mere reading of section 6, that the comptroller cannot act until the stock has been created as provided in section 5 of the act. It is the stock mentioned in section 5, and none other, that he is to issue; and it would be a fatal answer to an application for a *mandamus* against the comptroller, that there had been no stock as yet created under

that section. In short, there is no mistaking the intent and meaning of the enactment. The duty is imposed upon "the mayor, aldermen and commonalty of the city of New York," that is, the municipal corporation, to create a public fund or stock, to be denominated 'market stock,' and, after the fund or stock has been thus created, and not till then, on requisition of the market commission, the comptroller is to prepare and issue it and offer it for sale; sell it to the highest bidder (but not at a rate less than its par value), and forthwith deposit the proceeds with the chamberlain of the city, to the credit of the market commissioners.

2. As to the objection that the common council owe no duty to the relators. It is based an the ground that the statute, in language, imposes the duty to create the stock upon "the mayor, aldermen and commonalty of the city of New York," that is, the municipal corporation, and not upon the common council. This objection is equally groundless with that which has been considered. The rule is well established that the writ lies to the person or the body whose legal duty it is to perform the required act; as, where a corporation is required by law to do a particular act, the *mandamus* is addressed to that organ of the corporation which is to perform it. In the language of some of the cases, the writ lies against the body upon whom the duty of "putting the necessary machinery in motion" is imposed. The common council is the only organ of the corporation of the city of New York, which can create the stock under the statute. It must be done by an ordinance, and that can only be enacted by the legislative department, viz: the common council. *City Charter, Laws of* 1857, vol. 1, p. 874.

The order of the supreme court should be affirmed.

All the judges concurred.

Judgment affirmed, with costs.*

* When the remittitur was ordered to be filed (March 8, 1867), in the supreme court, application was made *ex parte* for an order for an *alias* mandamus to be incorporated in the formal order; but LEONARD, J., who was in the court of appeals when the cause was decided, held that the order on

the remittitur should not contain such a provision, but that relators could proceed at once on the original order. Accordingly, an application for an *alias* was made *ex parte* to INGRAHAM, J. (March 18, 1867), who held that notice must be given. An order to show cause was then obtained, and on the return day (the corporation counsel having declined to appear and having by letter advised the common council to enact the ordinance), Judge INGRAHAM declined to issue an *alias,* doubting the power of the court to do so.

He suggested that the court of appeals should, in its order, provide for the new writ. This question was then argued at length, in writing, for the relators; and the court, having taken time to consider, finally issued the *alias* mandamus (April 24, 1867). The common council did not obey the last writ, and proceedings to obtain an attachment were taken; but the day before that motion was to be heard, the ordinance was enacted.

According to this, the true practice seems to be, where a mandamus has been issued, and has failed of its purpose by reason of a stay of proceedings on appeal, upon the affirmance of the order granting it, to apply, on notice to the respondents in the writ for an *alias.*

No decisions were found directly in point, but from analogy to the proceedings in the old writs, in FITZ HERBERT, and upon intimations in various cases, it was argued that *alias* writs were allowable.

Judge INGRAHAM took the ground that an *alias* writ could not be issued, but that the court of appeals must provide for the case in their order. He requested the counsel for the relators to consult the judges of the court of appeals, which was then sitting in this city. Counsel consulted DAVIES, Ch. J., who conferred with his associates, and then informed counsel that it was not within the province of that court to do more than affirm or reverse the order appealed from; that the supreme court must provide for the enforcement of its own order.

For the foregoing information, I am indebted to CEPHAS BRAINERD, Esq., counsel in the cause.