(28 Misc. Rep. 735.)

PEOPLE ex rel. SHERRILL et al. v. GUGGENHEIMER et al.

(Supreme Court, Special Term, New York County. August 24, 1899.)

1. MANDAMUS AGAINST CITY COUNCIL OF NEW YORK—APPLICATION BY CITIZEN AND TAXPAYER OF BROOKLYN TO COMPEL ISSUE OF BONDS.

A citizen and taxpayer of the borough of Brooklyn, in the city of New York, is entitled to apply for a writ of mandamus requiring the council of the city of New York to adopt a resolution for the issue of the city's corporate stock or bonds to pay the award made in condemnation proceedings, taken pursuant to Laws 1892, c. 481, as amended by Laws 1893, c. 669, providing for condemnation by the city of Brooklyn of the property of the Long Island Water-Supply Company.

2. SAME—REASONS FOR NOT PERFORMING DUTY.

Where the legislature, in an act providing for the condemnation of certain property by the city of Brooklyn, declares that the public interest requires the acquisition of said property, and where the award made by the commissioners has been approved by the highest court of the state and the United States, a contention made by members of the council of the city of New York, on the hearing for a writ of mandamus, to compel the council to adopt a resolution for the issue of the city's corporate stock or bonds to pay the award, that there is an unnecessary expenditure of money, is without foundation.

3. SAME—EXISTENCE OF ANOTHER REMEDY.

As to a municipal corporation, the existence of another remedy is no objection to awarding a writ of mandamus requiring its council to perform its legal duties.

4. SAME—WRIT AGAINST CITY COUNCIL.

The city council, being an inferior body, is not exempt from judicial control, and a writ of mandamus may issue against it to compel performance of a duty imposed by law.

5. SAME—WHEN WRIT WILL ISSUE.

Where the duty of an officer or body is mandatory, and not discretionary, its performance and manner of performance may be compelled by mandamus.

6. SAME—MANDATORY ACT.

Laws 1892, c. 481, § 12, providing that the proper officers of the city of Brooklyn are authorized and directed to issue water bonds sufficient to pay the award in condemnation proceedings, taken pursuant thereto, to acquire the property of the Long Island Water-Supply Company, is mandatory, and by Laws 1897, c. 378, creating Greater New York, and providing that whenever it was lawful for any municipality which became consolidated with New York City to issue bonds for public purposes, and such bonds had not been issued prior to January 1, 1898, it should be lawful for the city of New York to issue its corporate stock or bonds instead, it became the duty of the municipal assembly and of the board of estimate and apportionment of the city of New York, no bonds having been issued by the city of Brooklyn, to adopt a resolution authorizing the issue of its corporate stock or bonds to pay such award; and a writ of mandamus may issue to compel the performance of such duty.

7. SAME—DENIALS ON INFORMATION AND BELIEF.

In proceedings for mandamus to require the council of the city of New York to adopt a resolution for the issue of corporate stock of the city to pay the award in the condemnation proceedings, taken pursuant to Laws 1892, c. 481, and the act amendatory thereof, providing for condemnation by the city of Brooklyn of the property of the Long Island Water-Supply Company, denials by councilmen, on information and belief, that the relators are citizens and taxpayers, are insufficient to raise an issue.

Application by the people, on the relation of Henry W. Sherrill, James McKeen, and Willis L. Ogden, against Randolph Guggen-

heimer and 28 others, as the council of the city of New York, for a peremptory writ of mandamus.     Writ granted.

J. Hampden Dougherty and A. C. Shenstone, for relators.

John Whalen, Corp. Counsel, and Chas. Blandy, Asst. Corp. Counsel, for defendant city of New York.

William J. Kelly, for defendants Cassidy, Conly, Doyle, and Murray.

McADAM, J.     The three relators, taxpayers and residents of the borough of Brooklyn, in the city of New York, apply for a peremptory writ of mandamus requiring the respondents, who are members of the council of the city of New York, to approve and adopt a resolution heretofore adopted by the board of aldermen of said city for the issue of the city's corporate stock to the amount of $570,000 to pay the award heretofore made in condemnation proceedings, taken pursuant to chapter 481 of the Laws of 1892 and the act amendatory thereof, to acquire the reservoir, wells, machinery, pipes, franchises, and all other property of the Long Island Water-Supply Company.

By chapter 481 of the Laws of 1892, as amended by chapter 669 of the Laws of 1893, the legislature of this state provided and directed that the public interest required the acquisition by the city of Brooklyn, for the public use, of the reservoirs, wells, machinery, pipes, franchises, and other property of the Long Island Water-Supply Company, and said city of Brooklyn was by said statute authorized to acquire the same for such use by condemnation, free of all liens and incumbrances whatsoever, provided that the proceedings authorized by the act should be commenced within one year after its passage.     The said act further provided how and in what manner and by whom such proceedings should be instituted, and to whom and in what manner notice of the proceedings should be given, for the appointment of commissioners to ascertain the just compensation to be made to any person or corporation in any manner interested in the said property or franchises, as to the duties and proceedings of such commissioners, for confirmation of their report at the special term of the supreme court, and for appeals from the order confirming such report.     It also provided that, when the report should be confirmed, the court should enter a final order in the proceedings, which should be binding upon all persons having any interest in the property or franchises condemned, directing that compensation be made pursuant to the determination of the commissioners, that the city of Brooklyn should thereupon be entitled to take and to hold forever the property and franchises condemned for the public use, and that payment of the compensation into court to the credit of any person or corporation mentioned in said order, in case a tender thereof be refused by such person or corporation, should be deemed a payment, within the provisions of the act.

Sections 11 and 12 of said act of 1892 are as follows:

"Sec. 11. Immediately upon payment being made, as hereinbefore provided, the city of Brooklyn shall be entitled to enter into the possession of the condemned property and franchises and hold the same in fee for the public use.

"Sec. 12. The proper officers of the city of Brooklyn are hereby authorized and directed to issue and to sell in the same form and manner as is now provided

for issuing and for selling duly authorized water bonds of said city, water bonds sufficient to pay the amount or amounts directed by the final order to be paid. Said bonds shall be payable in twenty years from the date of issue, and shall bear interest at a rate not to exceed four per centum per annum, shall be exempt from taxation, and shall not be sold for less than par. All necessary expenses of the proceedings herein authorized shall be paid by the comptroller upon vouchers certified by the commissioner of city works, and approved by the mayor, out of 'the water sinking fund.' "

Neither of said sections of the act of 1892 was amended or affected by the said act of 1893. Pursuant to the provisions of said statute, a proceeding was commenced by the presentation of a petition by the city of Brooklyn to the supreme court held in and for the county of Kings, at a special term thereof, and notice given as in the said statute required; and such proceedings were thereafter had that on or about June 7, 1892, an order was duly made by the supreme court authorizing the city of Brooklyn to take and hold said property and franchises forever for the public use, free from all liens and incumbrances whatsoever, upon making just compensation therefor, and appointing five disinterested freeholders, residents of the county of Kings, commissioners to ascertain such just compensation. Thereafter various of said commissioners resigned, and other persons were duly substituted in their place and stead, and the commission as finally constituted consisted of the following named persons, that is to say: E. W. Bliss, Hiram W. Hunt, Charles E. Emery, Edward Rowe, and Edward M. Shepard. The commissioners, after giving due notice of hearing, and after proceeding in the manner required by the said statute, made a report of their proceedings and determinations to the supreme court, which was filed in the office of the clerk of the county of Kings, January 25, 1893. The commissioners reported that a just compensation for the condemned property would be the sum of $570,000. Thereafter application was made for the confirmation of the report at a special term of the supreme court held in the county of Kings. Such proceedings were had thereupon that on or about June 29, 1893, an order was made therein at a special term of said court setting aside the report of the commissioners, and directing a rehearing before new commissioners mentioned in the last-named order. The city appealed from the special term order to the late general term of the supreme court held in and for the Second judicial department; and, after hearing due argument, the general term reversed the order refusing to confirm the report of the commissioners, and directed confirmation of the same; and thereupon, on or about December 21, 1893, an order of the general term was entered reversing the special term order, confirming in all respects the report of the commissioners (73 Hun, 499, 26 N. Y. Supp. 198), directing that compensation should be made pursuant to the determination of the said commissioners of appraisal; that, upon the payment of the compensation as therein set forth, the city of Brooklyn should acquire title to and be entitled to take and to hold forever for the public use the property and franchises so condemned, free of all liens and incumbrances whatsoever, and to enter into the possession of all the condemned property and franchises specified and described in the petition, and hold the same in fee for the public use. Thereafter an

appeal was taken from the order of the general term to the court of appeals, which affirmed said order of the general term (143 N. Y. 596, 38 N. E. 983), and thereafter, and on December 4, 1894, an order was made in the supreme court, and entered in the office of the clerk of the county of Kings, upon the remittitur of the court of appeals, making the order and judgment of said court the order of the supreme court, and affirming in all respects the order of the general term. Thereafter the said Long Island Water-Supply Company sued out a writ of error, and appealed to the supreme court of the United States from the order and determination of the court of appeals and the order entered thereupon, and the same were thereafter duly affirmed by the supreme court of the United States. 166 U. S. 685, 17 Sup. Ct. 718. Thereupon the city of Brooklyn became entitled to enter into the possession of the condemned property and franchises, and to hold the same in fee for public use, upon first making payment therefor as provided by the statute (chapter 481, Laws 1892, as amended), and in the final order entered in the proceeding; and it thereupon became the duty of the proper officers of the city of Brooklyn to issue bonds, as directed by the act, to pay the award. Payment of the award has not been made. Possession of the property and franchises has not been transferred, either to the late city of Brooklyn or to the city of New York, and bonds have not been issued to pay the award.

By the provisions of chapter 378 of the Laws of 1897 (the Greater New York Charter), except as otherwise provided therein, all the powers or duties conferred or charged upon the common council of the mayor, aldermen, and commonalty of the city of New York as such city was formerly constituted, or the board of aldermen thereof, or upon the common council of the city of Brooklyn, or of Long Island City, or upon any board, body, or officer of any of the municipal and public corporations or parts thereof by said act consolidated with the city of New York, as theretofore known and bounded, were and are to be exercised and performed by the municipal assembly of the city of New York as by said act constituted, subject, nevertheless, to the power of approval or disapproval by the mayor of the city of New York, as provided by the act (section 46). It is further provided by the charter that all laws or parts of laws theretofore passed, creating any debt or debts of the municipal and public corporations, united and consolidated as aforesaid, or for the payment of such debts, or respecting the same, should remain in full force and effect, except that the same should be carried out by the corporation thereby constituted, to wit, the city of New York (Laws 1897, c. 378, §§ 4, 5). The charter (section 170) further provides that whenever it is lawful for any of the several municipal or public corporations which thereby became part of the city of New York to issue bonds for public purposes, but which bonds had not been issued prior to January 1, 1898, it shall be lawful for the said city to issue corporate stock of said city for the same purpose, and that such corporate stock, whether issued in pursuance of laws theretofore passed, or which might be thereafter passed, or in pursuance of the provisions of the charter itself, should be, unless otherwise provided

by said charter, issued by the comptroller only to the extent to which he might be thereunto authorized by resolution of the municipal assembly and the board of estimate and apportionment adopted by vote, as provided for in said act (section 169).

Inasmuch as no bonds were issued by the city of Brooklyn to pay the award for said property of the Long Island Water-Supply Company, it became the duty of the municipal assembly and of the board of estimate and apportionment, in obedience to the provisions of the charter and the act of 1892, by resolution by appropriate vote, to authorize the issue of corporate stock of the city of New York, in lieu of bonds as directed by the act, in order to pay the award. The precise nature and description of the bonds were fixed and determined by the act; and by the provisions of the charter (section 169 et seq.) the precise form and character of bonds (therein called corporate stock of the city of New York) to be issued in lieu of such bonds of the late city of Brooklyn as were prescribed by the act of 1892 are also fixed and determined. On or about July 11, 1898, the board of estimate and apportionment duly passed the following resolution:

"That pursuant to the provisions of the Greater New York Charter, and especially sections 169, 170, 207, and 208 thereof, the comptroller of the city of New York be, and he hereby is, authorized, subject to concurrence herewith by the municipal assembly, to issue forthwith corporate stock of the city of New York for water purposes in the amount of $570,000, to pay the award heretofore made in the condemnation proceedings taken pursuant to the provisions of chapter 481, Laws 1892, and the act amendatory thereof, to acquire the reservoir, wells, machinery, pipes, franchises, and all other property of the Long Island Water-Supply Company, said award to be paid and distributed as fixed and determined and directed by the final order of the supreme court in said proceedings."

At a meeting of the board of aldermen held on June 27, 1899, the following resolution was duly adopted:

"Whereas, the board of estimate and apportionment on July 11, 1898, adopted a resolution, subject to concurrence therewith by the municipal assembly, authorizing the comptroller to issue corporate stock of the city of New York to the amount of five hundred and seventy thousand dollars ($570,000), to pay the award heretofore made in the condemnation proceedings taken, pursuant to the provisions of chapter 481 of the Laws of 1892, as amended, to acquire the reservoir, wells, machinery, pipes, franchises, and all other property of the Long Island Water-Supply Company, said award to be paid and distributed as fixed and determined and directed by the final order of the supreme court in said proceedings: Therefore, be it resolved, that the municipal assembly hereby concurs in the said resolution, and authorizes the comptroller to issue corporate stock of the city of New York for the said purpose to the amount of five hundred and seventy thousand dollars ($570,000)."

The resolution so adopted as aforesaid by the board of aldermen on June 27, 1899, was offered in the council at a meeting of said council held on the same date, but the resolution was defeated, there not being sufficient votes in its favor, as required by the charter, to carry the same. At a meeting of the council held July 11, 1899, the resolution was again offered for adoption, but it was again defeated, there not being sufficient votes in its favor to carry the same. Although the council has been requested by the comptroller of the city, and by other persons, to pass the resolution, it has declined and refused so to do. As the board of estimate and apportionment has

authorized the issue by the comptroller of corporate stock of said city, for the purchase by said city of the said property of the Long Island Water-Supply Company, and to pay the award made therefor, and as the board of aldermen has also authorized such issue, the action of the members of the council in refusing to concur in the resolutions of the board of estimate and apportionment and of the board of aldermen, or to authorize the issue of such stock, is, it is claimed, a violation of their plain duty, a positive disobedience of the obligation enjoined by the charter, an obstruction to the due administration of the business of the city, and, as well, an injury and damage to the people of the city, and particularly to the people of the borough of Brooklyn, including the relators. The award is carrying interest at the rate of 6 per centum per annum, whereas the bonds to pay therefor are not to bear interest at a rate to exceed 4 per centum per annum. The interest already amounts to about $200,000, for which the city of New York and the taxpayers therein, including the relators, are liable, causing them, as they claim, great loss and damage; and the relators insist that, unless a peremptory mandamus issue, they will be without adequate remedy at law. The corporation counsel, representing the municipality and the municipal assembly, appeared on the return of the order, and stated that the interests of the city would be best subserved by granting the writ, as the city imperatively required the property condemned for public use, and, on behalf of the municipal authorities, he consented in open court to an order that the writ issue at once. It is only necessary, therefore, to consider the objections raised by the four councilmen, who were heard ex gratia, and pass on the questions they submit before disposing of the application.

First. As to the locus standi of the relators: The relators, being citizens and taxpayers, are entitled to apply for the writ claimed. The court, in People v. Daley, 37 Hun, at page 467, said:

"It is sufficient to support the application that the applicant is a citizen, and entitled to insist upon the execution of the laws of the state. These laws are made for the promotion of public order and individual security, and, accordingly, every citizen has a sufficient interest in their execution to entitle him to prosecute an application of this description. Laws are enacted for the well-being, good order, and security of the community and of its constituent members. Public officers are provided for, elected, and appointed to execute their provisions, and, where they designedly fail or intentionally omit to do that, every citizen has the inherent right to apply to this court and insist upon it that the writ of mandamus shall issue in such a form as to secure the observance of that duty. The authorities in this and several of the other states, and those also of the court of king's bench in England, have gone very far in supporting this proposition."

See, also, People v. Board of Sup'rs of Seneca Co., 18 How. Prac., at page 463; People v. Common Council of Buffalo, 16 Abb. N. C. 96; People v. Board of Sup'rs of Sullivan Co., 56 N. Y. 249, 253; People v. Halsey, 37 N. Y. 344; People v. Common Council of City of Brooklyn, 77 N. Y. 503; Baird v. Board of Sup'rs of Kings Co., 138 N. Y. 95, 33 N. E. 827; Railroad Co. v. Hall, 91 U. S. 343; People v. Van Wyck, 27 Misc. Rep. 439, 59 N. Y. Supp. 134.

Second. The propriety of the expenditure of the money: The four councilmen declare that in their belief the resolution the relators

want passed by the council is not in the interest of the city, and that it seeks to authorize an unnecessary expenditure of money. This objection is well answered by the court of appeals (143 N. Y., at page 618, 38 N. E. 989):

"The legislature must be presumed to be the best judge of the necessity of public works and improvements, of how they shall be instituted, and of how they should be carried on so as best to subserve public ends."

In the act of 1892, supra, it is expressly declared that the public interest requires the acquisition of this property; so that, after this legislative declaration, and the approval of the award made by the commissioners by the general term of this court, the court of appeals of this state, and the supreme court of the United States, the mere fact that four councilmen dissent from the conclusions arrived at by the legislature and the different courts named, and claim that it ultimately rests with them to determine the propriety of the matters involved, can have but little weight in arresting the orderly administration of justice. As an apparent excuse for their conduct, the four councilmen allege that the property and franchises of the Long Island Water Company are not worth $570,000, and in the same paragraph they "aver that the said Long Island Water-Supply Company has not demanded or attempted to collect said alleged award, but, on the contrary, has applied to the court to have the same set aside," which plainly shows that, while the four councilmen think the award too high, the water company thinks it too low. This has been the attitude of the water company in all the litigations under the act of 1892, and when the matter was before the court of appeals (143 N. Y., at page 606, 38 N. E. 985) that court said, "We may concede that the evidence would even have justified a larger award, even upon the theory upon which the commissioners proceeded;" so that the highest court in the state deemed the award fair, though moderate in amount. The city of Brooklyn had previously contracted to purchase the water plant at a price equal to $1,250,000, but this contract was annulled as the result of an action by a taxpayer of that city. See Ziegler v. Chapin, 126 N. Y. 342, 349, 27 N. E. 471, as explained in 143 N. Y., at page 599, 38 N. E. 983. The city, by the award of the commissioners and action of the courts, under the act of 1892, gets the property $500,000 cheaper. Of course, the water company does not want to part with its property for the amount awarded,—$570,000,—and the respondents' contention that there is unnecessary or extravagant expenditure involved is without the slightest shadow of truth.

Third. As to the existence of a remedy at law: As to corporations, the existence of another and adequate remedy is no objection to awarding the writ. McCullough v. Mayor, etc., 23 Wend., at page 461; People v. Mayor, etc., 10 Wend. 393; People v. Steele, 2 Barb., at page 418.

Fourth. The right to issue the writ directed to the council: The four respondents assume that the proceeding by the relators is anomalous, and without precedent; an assumption without warrant. Writs of a similar character have been issued against boards of apportionment, commissioners of public works and highways, municipal corporations, city officers, and inferior judicial tribunals. See 1

Fiero, Spec. Proc. (2d Ed.) 162 et seq.; People v. Board of Sup'rs of New York, 32 N. Y. 473; People v. Comptroller of City of New York, 77 N. Y. 45; In re Freel, 148 N. Y. 165, 42 N. E. 586; People v. Treanor, 15 App. Div. 508, 44 N. Y. Supp. 528; Com. v. Commissioners of Alleghany Co., 32 Pa. St. 218; Lower v. U. S., 91 U. S. 537; People v. Supervisors of Columbia, 10 Wend. 363; People v. Collins, 19 Wend. 56; McCullough v. Mayor, etc., 23 Wend. 457; Pumphrey v. Mayor, etc., 47 Md. 145; State v. Board of President & Directors of St. Louis Public Schools, 134 Mo. 296, 35 S. W. 617; State v. Rickards, 16 Mont. 145, 40 Pac. 210; People v. White, 54 Barb. 622; People v. Common Council of New York, 45 Barb. 473; People v. Common Council of Syracuse, 20 How. Prac. 491, affirmed in 3 Abb. Dec. 502; High, Extr. Rem. § 32; People v. Board of Apportionment of City & County of New York, 3 Hun, 11, affirmed in 64 N. Y. 627; People v. Common Council of Syracuse, 78 N. Y. 56; Dill. Mun. Corp. (4th Ed.) § 849; People v. Banks, 67 N. Y. 568; and kindred cases. In Davis v. Mayor, etc., 1 Duer, 451, affirmed in 9 N. Y. 263, an injunction was issued forbidding the performance of a corporate act. The board of aldermen evaded the injunction. The court held that when an injunction is directed to a corporation it is operative and binding not only upon the corporation itself, but upon every person whose personal action, as a member or officer of the corporate body, it seeks to restrain or control; that there is no distinction between a municipal corporation and any other corporation aggregate in respect to the power of a court of justice over its proceedings; and attachments were issued as for contempt against the refractory aldermen. The council is an inferior body, unlike the state legislature, which represents the sovereignty of the state, and is the mere creature of the legislative will, with power to pass by-laws in the form of ordinances and the like, and is not exempt from judicial supervision and control. "The main distinction between public and private corporations is that over the former the legislature, as the trustee or guardian of the public interest, has the exclusive and unrestrained control; and, acting as such, as it may create, so it may modify or destroy, as public exigency requires or recommends, or the public interest will be best subserved. The right to establish, alter, or abolish such corporations seems to be a principle inherent in the very nature of the institutions themselves; since all mere municipal regulations must, from the nature of things, be subject to the absolute control of the government." Ang. & A. Corp. § 31. In Capet v. Parker, 3 Sandf. 662, an injunction was issued, and the attorney for the enjoined party advised that it was illegal. The court, in censuring the conduct of its officer, said:

"It was very different from what should have been pursued. He was an officer of the court. He ought, therefore, to have advised his client to respect its authority, even though, in his opinion, the court had erred. We live under a government of law, and it is one of the peculiar felicities of our condition that the moral sense of the community is so strongly on the side of obedience to the law that in the civil administration of justice resort to physical force is seldom necessary to carry the judgments of the courts into effect. They are submitted to as a matter of course. It is peculiarly the duty of those who profess the law to cherish this feeling, and to elevate and strengthen the spirit of obedience to judicial authority."

It will not be inferred that the commissioners erred in the amount of their award, and that the different courts erred in sustaining them, and the respondents should have given the action of these officials and tribunals the respect commonly accorded to judicial adjudications, and not decided, as they appear to have done, that these responsible and reputable officials and the highest court of the state and of the United States did not understand their duties in reference to the condemnation proceedings as well as the respondents.

Fifth. When the writ may direct the doing of an act and the manner of doing it: The rule undoubtedly is that where an officer or body is clothed with a discretion either to do or omit to do an act, a mandamus can only issue to compel a decision, but cannot direct its form. So that, if the respondents had been given a discretion in the matter, the power of the court would be limited to compelling them to exercise their discretion, and could not direct them to vote for or against the measure. But where the duty is mandatory, and no discretion is vested, its performance and manner of performance may be compelled by mandamus (People v. Maher, 141 N. Y. 330, 36 N. E. 396; People v. Commissioners of Land Office, 149 N. Y. 26, 43 N. E. 418); and a mandamus directing a judicial officer to enter judgment in a particular manner, where the statute is mandatory, and there is no discretion, was sustained in People v. Murray, 2 Misc. Rep. 152, 23 N. Y. Supp. 160, affirmed in 138 N. Y. 635, 33 N. E. 1084.

Sixth. The act is mandatory, and the council has no discretion: In People v. Common Council of City of Buffalo, 2 Misc. Rep. 7, 21 N. Y. Supp. 601, affirmed in 140 N. Y. 300, 35 N. E. 485, a mandamus was granted after argument commanding the common council to audit and adjust the amount of damages occasioned to the property of the petitioner at $5,500, the sum fixed by the commissioners in their report. The proceeding was instituted under chapter 393 of the Laws of 1890, "authorizing" the city of Buffalo to audit and adjust the amount of damage which had been occasioned to the property of the petitioner by the extension of Elmwood avenue, in that city. Commissioners had been appointed by the court, as provided in the act, to appraise the damage, and had made their report, awarding the petitioner $5,500. Counsel for the city contended that the act was permissive, and not mandatory. In overruling the objection the court said:

"The language used in the act is not different from that used in many cases where this question has been before the courts. In People v. Board of Sup'rs of Livingston Co., 68 N. Y. 114, the same language was used by the legislature, and the court held it was mandatory. Judge Earl, in his opinion, said, 'Where the public interest or private right requires that the thing shall be done, then the word "may" is generally construed as "shall," ' and a peremptory writ of mandamus was ordered. In People v. Board of Sup'rs of Otsego Co., 36 How. Prac. 1, it was held that where the legislature authorized and empowered the board of supervisors to cause taxes illegally assessed to the county to be repaid, it became their duty to do it, and a peremptory writ of mandamus was ordered. On appeal to the court of appeals (51 N. Y. 401) the court held that the statute was mandatory, the court saying that the words 'authorized and empowered' are mandatory when the statute directs the doing of a thing. Many other cases have been examined, but enough have been cited to illustrate the rule that, where a party has a claim based upon natural justice and equity, permissive words in a statute are construed so as to accomplish what the legislature intended."

This case is much stronger, for section 12 of the act of 1892 provides "that the proper officers   *   *   *   are hereby authorized and directed to issue," etc.   The word "directed," as used in this statute, means that the officers are ordered, and has the same force as an order given to a soldier, whose only answer is obedience.   Whoever accepts public office takes it with all the responsibilities and duties the law casts upon it.   No one is obliged to accept public office, and, if he cannot perform its duties, the statute points out an easy mode of resigning its cares; but while in office he must obey the law, or make place for some one that will.   No one is above the law; all must yield obedience to it, and in a becoming manner.

Seventh. Attempt to raise unnecessary issues: When writs of mandamus have been applied for against inferior courts, the response has generally been a waiver of all technicalities, a frank submission of the controversy, narrowing it down to the point in dispute, and expressing a willingness to obey at once any instruction or direction from the superior authority.   The four respondents, instead of following this laudable example, have challenged the jurisdiction of the court to advise or direct them, and claim that, if the act of the legislature imposes any mandatory duties on them, it is unconstitutional and void.   They then deny on information and belief that the relators are citizens and taxpayers.   But such a form of denial in proceedings for mandamus has no value and raises no issue.   People v. Common Council of City of Brooklyn, 77 N. Y. 503, 511; In re Guess, 16 Misc. Rep. 306, 38 N. Y. Supp. 91; In re Freel (Sup.) 38 N. Y. Supp. 143; People v. York, 31 App. Div. 527, 52 N. Y. Supp. 401, 1060.

In conclusion the court decides that the council, and particularly the four members of it who have been heard upon this application, have neglected to perform a plain duty concerning which they have no discretion; that the direction from the legislature, representing the sovereign power of the state, must be obeyed; and that a writ of mandamus issue commanding the performance of such duty, with costs.