THE PEOPLE *on rel.* THE COMMISSIONERS OF RECORDS *a.* THE SUPERVISORS OF N. Y.

*Supreme Court, First District; General Term, September,* 1860.

TAXES.—MANDAMUS.

Although a statute under which public expenses are incurred, may be unconstitutional, a tax may properly be levied to meet the expenses.

The act of April 17, 1860, imposes on the supervisors of the county of New York the duty of collecting the expenses of the Commissioners of Records.*

Of the cases in which the imposition of a tax may be compelled by mandamus.

Appeal from an order granting a mandamus.

Pursuant to chapter 407 of the Laws of 1855, the Commissioners of Records incurred expenses in executing the duties

---

* See a former decision in this matter, 10 *Ante*, 233.

devolved upon them, and made contracts for copying and printing the Indexes of Records in the register's office; and, in 1859, made application to the Board of Supervisors to raise the amount necessary to enable them to complete their duties under the statute.

The Board of Supervisors refused to do so, on the ground that the act of 1855 was unconstitutional.

Thereupon the Legislature, in 1860 (ch. 509, § 6), enacted that the Board of Supervisors be empowered to cause to be raised and collected the further sum, not exceeding $80,000, to meet and pay whatever sum, up to that amount, might be found due to the contractors with the Commissioners of Records; and that the comptroller be authorized to pay the amount when the same shall be judicially determined.

This provision is part of the general tax-levy for the year 1860, and was passed on the 17th of April, 1860.

On the 22d of May, 1860, the Commissioners of Records certified to the comptroller and the Board of Supervisors, that there was due to the contractors for work under said act of 1855, the sums of $65,783.51, $1,953, $1,645.43, and $2,562.32, and required said Board of Supervisors to cause said sums to be raised pursuant to the said acts of 1855 and 1860, which the Board of Supervisors, up to 26th of July, 1860, neglected and refused to raise.

On the 26th of July, 1860, an order was granted for the Board of Supervisors to show cause on the 6th of August, why a mandamus should not issue to them, commanding them to raise the said sums.

That motion was argued before Mr. Justice Sutherland, who, on the 10th of September, 1860, decided that the motion be granted, and the mandamus asked for, issue.

SUTHERLAND, J.—The grant by the Legislature, of an official power, involves a corresponding public duty; and where the power is not expressly discretionary, its exercise is a peremptory public duty.

The mere constitutional grant of the power, without any express or positive injunction of its exercise, makes its exercise a peremptory duty, when, or as, an occasion for its exercise arises; unless the statute conferring the power, expressly leaves it to

the discretion of the officer or officers upon whom the power is conferred, whether he or they shall, or shall not, exercise the power.

Public official powers must be supposed to be granted from public motives, and for the public good, and their exercise is not a matter of discretion, unless expressly made so.

It follows, that section 6 of the act of April 17, 1860, entitled, " An act to enable the Board of Supervisors of the county of New York to raise money by tax for city purposes," &c., is in effect, so far as it relates to the Board of Supervisors, a legislative mandamus, directing them to cause to be raised and collected by tax, " the further sum, not exceeding eighty thousand dollars," therein mentioned, either absolutely, and without any condition or limitation whatever, or conditionally ; that is, upon the judicial determination referred to in the section.

The section is as follows :

SEC. 6. " And the said Board of Supervisors are hereby empowered to cause to be raised and collected, in manner as aforesaid, the further sum, not exceeding eighty thousand dollars, to meet and pay whatever sum, up to that amount, as may be found due to the contractors with the Commissioners of Records of the city and county of New York. The comptroller is authorized to pay said amount, when the same shall be judicially determined."

The counsel for the supervisors insist, that they are not authorized or obliged by this section to cause any sum whatever to be raised by tax, until the amount (if any) due to the contractors with the Commissioners of Records, has been *judicially determined.* If this is the true construction of the section, or if, indeed, the judicial determination of any question or matter whatever, is by the section made a condition precedent of the duty to raise by tax any sum whatever for the purpose mentioned in the section, then the mandamus asked for by the relators cannot be granted, for it is conceded that there has been no such judicial determination.

The question then is : Were the words, " when the same shall be judicially determined," intended to qualify the authority given by the section to the Board of Supervisors, to raise a certain amount by tax, or exclusively the authority given by it to the comptroller, to pay such amount when raised ?

The section is certainly loosely and obscurely drawn, but it is quite clear to me that these words were intended to qualify exclusively the authority given to the comptroller to pay over the money to the relators, or to the contractors with them when raised.

"The comptroller is authorized to pay said amount when the same shall be judicially determined," are the words of the section relating to the comptroller.

When what is judicially determined? What do the words "*the same*" refer to? The Board of Supervisors and the counsel were certainly quite excusable for thinking that these words refer to the *amount,* and that the judicial determination contemplated was a judicial determination of the *amount* due to the contractors with the Commissioners of Records. Such would be the natural and grammatical construction of the sentence; but the Legislature do not always speak good grammar, or mean what they say; and I am confident that in this instance, such a construction would not be in accordance with their real intention.

We must assume that the Legislature adopted and passed this section with knowledge of the act of the 13th of April, 1855, appointing the Commissioners of Records, and of its provisions; and with knowledge also of what was notorious, that the commissioners had entered into certain contracts with parties for the execution of the work, or the accomplishment of the purposes contemplated by the act; that considerable work had been done under their contracts, for which pay was claimed; that application had been made to the Board of Supervisors to raise by tax a sufficient or certain amount to make such payments; that the supervisors had refused so to raise any amount for that purpose, mainly, if not solely, upon the ground that the act was unconstitutional and void; that an application had been made to the Supreme Court for a mandamus to compel them so to raise a certain sum for such purpose, which had been refused. We must, I think, assume that section 6, of the act of 1860, in question, was passed at the instance of the commissioners, or of the contractors who claimed pay under their contracts with the commissioners, in view of this controversy with the Board of Supervisors of this constitutional question, and, perhaps, of other questions for judicial determination, aside

from the mere ascertainment of the *amount* due for work under the contracts which had been, or might be, raised and agitated.

It does not appear that any question as to the construction of the contracts, or either of them, has ever been raised or suggested. Assuming the original act, appointing the commissioners, to be constitutional, and the contracts under which the work has been done, plain and unequivocal, why should a *judicial* determination be required to ascertain or find the amount due for work under the contracts? It does not appear that there ever had been a *question* as to the amount of work actually done, or as to the rate of compensation, or as to the time or times of payment, and I cannot think that the Legislature passed the section of the act of 1860, in question, in view of any such question. From the nature of the work, I cannot assume that the Legislature thought there would be any controversy as to the amount of work actually done; and the rate of compensation, and time or times of payment, being fixed by the contracts, the supervisors or their clerk could ascertain the amount due for the work actually done, without the aid of a judge or court. Indeed, if in the course of a legal proceeding or action it should become necessary for the court to ascertain the amount due to the contractors under the contracts, such amount would probably be ascertained by a referee appointed for that purpose, and not by the court. I think, therefore, if any meaning or effect at all is to be given to the words, " when the same shall be judicially determined," as used in section 6 of the act of 1860, that they must be held to refer to the judicial determination of the constitutional question above referred to, or, at all events, to the judicial determination of some question or questions other than as to the *amount* due for work done under the contracts. I think they must be held to refer to the judicial determination of some question or questions as to whether *any* sum or amount was *justly* or *legally* due or payable, or collectable under the contracts, assuming their construction, the amount of work done under them, and the rate of compensation, free from doubt; in other words, to some question or questions as to the legality of the contracts, or the authority of the commissioners to enter into them so as to legally bind the city to fulfil them.

If these views as to the construction of section 6 of the act of 1860 are correct, it follows on the undisputed facts which appear from the moving papers in this case, that it is the duty of the Board of Supervisors to cause to be raised by tax the sum of $72,034.26, due for work done under the contracts,—assuming the contracts to be legal, the original act of 1855, appointing the commissioners, to be constitutional, and the contracts to have been authorized by it; but it also follows from this construction, that the comptroller will not be authorized to pay the money, when so raised, to the relators, or to the parties who have done the work, until the judicial determination referred to in the section has been had or obtained. I look upon this section as intended to compromise or settle the controversy as between the relators, or their contractors, and the Board of Supervisors. It makes it the duty of the Board of Supervisors to raise by tax the amount found due. That amount, when so raised, is to remain in the hands of the comptroller to abide the judicial determination. There are some technical objections made to the granting of a peremptory mandamus in this case, which it is hardly worth while to notice.

I will say, however, that the supervisors, when called upon by the relators to raise, or to take the necessary steps to raise by tax the sum of $72,034.26, alleged to be due for work under the contracts, do not appear to have then questioned, and do not now on this motion show any grounds for questioning, the *amount* due, if the contracts were legal, and made in pursuance of a constitutional law, and binding on the city. When so required to take the necessary steps to raise this amount by tax, it does not appear that in words they refused to do so, or ever have so refused; but I think that the relators had a right to treat their neglect or delay in taking these steps, and their action subsequent to the requisition, in referring the matter to a committee, &c., as equivalent to a verbal refusal to comply with the requisition. I do not say that this delay or action of the supervisors was without excuse, for certainly section 6 of the act of 1860, under which the requisition was made, is sufficiently obscure to have justified considerable hesitation in a compliance.

The result of my construction of this section is, that the

motion of the relators must be granted, and the mandamus asked for, issue.

From that decision the defendants appealed.

*A. R. Lawrence, Jr.*, for the appellants.

*W. Fullerton, James T. Brady*, and *John W. Edmonds*, for the respondents.—I. The question of the constitutionality of the act of 1855 is not involved in this application ; for, even if the act of 1855 is unconstitutional, it certainly is constitutional and competent for the Legislature to direct the Board of Supervisors to raise money to defray the expense of preserving the county records. And that is all which this act professes to do.

II. The act of 1860 does not prejudge the constitutional question, but leaves it open to be contested before payment.

III. The act of 1855 is not unconstitutional. (Draper *a.* Wood, 15 *N. Y.*, 532 ; Per Harris, J., at special term in Central Park Case.)

IV. The act of 1860 is imperative on the Board of Supervisors. (People *a.* Westchester, 12 *Barb.*, 452 ; Regina *a.* Tithe Commissioners, 14 *Q. B.*, 474.)

The words " are empowered" mean, must or shall, because public interests or rights are concerned; and because the public or third persons have a claim *de jure*, that the power shall be exercised. (1 *Kent's Com.*, 5 ed., 467, note D. ; Newburg Turnpike Co., *a.* Miller, 5 *Johns. Ch.*, 113 ; Rex *a.* Barlow, 2 *Salk.*, 609 ; Blackwell's Case, 1 *Vern.*, 152 ; Malcolm *a.* Rogers, 5 *Cow.*, 193 ; Minor *a.* Michigan Bank, 1 *Pet.*, 64.)

By the Court.*—Allen, J.—By section 6, of the tax law of 1860 (ch. 509, p. 1024 of Session Laws), a duty was imposed upon the Board of Supervisors of the county of New York, to cause to be raised and collected during the current year, and in the manner in which the other taxes are levied and collected within the city and county, a sum not exceeding eighty thousand dollars, to pay such sum as may be found due to the contractors with the Commissioners of Records appointed by the act of 1855 (*Sess. Laws*, 763). The act is imperative, leaving no

---

* Present, Sutherland, Bonney, and Allen, JJ.

discretion in the defendants whether they will exercise the authority conferred.

Although the language of the act is simply enabling, yet as it confers a power which concerns the public, as well as individuals, it is not merely permissive, but is mandatory. (Rex *a.* Barbour, 2 *Salk.*, 609; 1 *Kent's Com.*, 467; Newburg Turnpike Co. *a.* Miller, 1 *Johns. Ch.*, 113.)

The only discretion vested in the supervisors is, as to the amount within the prescribed limits which they will cause to be levied and collected upon the taxable property of the county for the purposes named, and that is not an arbitrary discretion, although in its exercise their determination would not be the subject of review.

As public officers they are required to exercise their best judgment as to the amount which will probably be necessary to pay the claims intended to be provided for, leaving it for other officers or tribunals to decide the ulterior question, whether, by law, the contractors named in the act be entitled to recover any part of it.

The object of the Legislature was to provide a fund for the alleged claim when the amount should be judicially determined. Whether it was wise or necessary to make provision for collecting from the taxpayers, and placing in the custody of the financial agents of the city and county, a fund for the payment of a contested claim in advance of its adjustment, is not for us to decide.

It is enough that the Legislature, in the exercise of its taxing powers, directed it to be done. Conceding the act of 1855 to be unconstitutional, and all contracts under it to be invalid, it does not follow that the Legislature might not, adjudging the services to be performed under the act to be valuable to the county, direct their payment absolutely, and cause a tax to be levied for that purpose. (Town of Guilford *a.* Supervisors of Chenango County, 3 *Kern.*, 143.)

They have, however, only directed an amount to be levied and collected, by way of. making provision for the payment of the claim when the amount shall be "judicially" determined.

The constitutionality of the law of 1855, or the validity of the acts of the commissioners under it, are not before us. We do not undertake to decide, and cannot upon this appeal decide,

whether any sum whatever, and if any, what amount, is due or should be paid to the claimants; and these questions cannot be determined by the Board of Supervisors, for the reason that the Legislature has referred them for decision to another tribunal.

For the purpose of their own action, the supervisors could adjudge what sum would probably be required on the contingency that the claim should be declared valid.

It is not claimed that the amount required by the order appealed from to be raised, is unreasonable, or larger than should be raised, if any action is taken under the section.

On the contrary, it is impliedly, if not expressly conceded, that in the exercise of a sound discretion, this amount, if any thing, should be raised.

In the affidavit of the president of the board, read upon showing cause against the order, it is not claimed that there is any dispute or doubt as to the amount which will be necessary to pay the claim, if the claimants shall be adjudged entitled to any thing. The objection is rather to the validity of the act of 1855, and to the power of the agents of the county to incur expenses chargeable upon the county when there is no appropriation in the treasury to pay them.

It is true, that it is stated in the affidavit that the board has no means of ascertaining whether the expenses had been incurred, or the amount of such expenses, other than the certificate of the commissioners.

This, however, is the evidence contemplated by the act·of 1855, and unimpeached, is, *prima facie*, sufficient to authorize the action of the supervisors. It is not pretended that the supervisors were delaying action for the want of more definite or reliable information. The counsel for the appellants does not, in his printed points, object that the order should not have named the amount, but simply directed the defendants to raise such sum as they should judge to be necessary.

Perhaps the mandamus might have been in that form, had it been suggested that the supervisors questioned the amount,.and desired to pass upon it.

But the contest is, really, as to the duty of the supervisors to act at all, rather than as to what sum they shall raise; and as they are not to judge upon the validity of the claim, they are

not at liberty to refuse to name the amount which will probably be necessary, if the claim is valid, to satisfy it. It is claimed that the application is premature, and that there has been no neglect or refusal by the defendants to justify the mandamus.

If this were so, it would best promote public interests to pass upon the merits of the controversy, rather than dispose of the matter upon technical objections, which would only lead to a renewal of the application, and another process of litigation, during which the assessment levy of the annual tax must be suspended, and possibly to the great detriment of the county. But without imputing any criminal or intentional neglect of duty on the part of the defendants, I think the case shows a palpable mistake on their part as to their duty, and a delay and omission to act sufficient to authorize the order of the court to put them in motion. The delay evidently arises from a misconstruction of the act, and of their duty under it, and was not a delay merely because a proper time for action had not arrived. They had not acted, simply because they did not consider themselves bound to act.

And it must be borne in mind, that the provision sought to be enforced, is only operative for the current year, it being a part of the act providing for the annual tax-levy upon the county; and that the whole county tax authorized by the act must be levied in a single assessment; and that if this tax is omitted in the tax-levy for the year, and the annual assessment and tax-roll completed without it, the parties interested are remediless. Again, there is no mode of compelling an immediate compliance with, or a direct denial of, any request or demand upon the supervisors as a body. Hence their refusal to do a particular act, if they do not choose to come to a direct vote, and to which they cannot be brought by any individual, must be determined by their acts, and omissions to act. An individual is not called upon to await a formal vote, to which they may never come, when by so waiting the time and opportunity for action may be lost; as in this case, the residue of the tax for the year may be assessed and collected, and this omitted by the inaction of the supervisors. I am of opinion, that without imputing any bad faith to the supervisors, or any intention to disregard or evade the law, the circumstances justified the application.

The certificates and vouchers were prepared about May 22, 1860, and at a meeting of the board on that day, were referred to the committee on civil courts.

On the 10th of July, that committee reported that it was inexpedient to raise the sum claimed, because the matter had not been judicially determined; and on the 17th of July, the report was recommitted to the same committee, but for what purpose does not appear. It was evidently, however, not merely to ascertain the amount, or probable amount, of the claims.

On the 7th of August, after the issue of the first order on their proceedings, the board had a meeting, and took no action in the premises. I think the relators were entitled to more.

It is also objected that the order should have been for an alternative, rather than a peremptory mandamus.

But this was a case calling for prompt action in view of the public interests, as the tax-levy for the year was awaiting the decision. There was no dispute about facts, and it was a proper case for the court, in the exercise of a sound discretion, to make the writ peremptory in the first instance, the parties having been fully heard upon the merits. (People *a.* Judges of Cayuga County, 2 *Johns. Ch.,* 68 ; *Exp.* Rogers, 7 *Cow.,* 526.)

There was no reason for subjecting the parties to the delay incident to a formal procedure.

It is proper to, say that we have only to do with the first clause of the section, which relates to the action of the Board of Supervisors. With the other clause, which concerns the comptroller and the final disposition of the fund, we have nothing to do. Should we undertake to give a construction to the whole section, and declare the duty of the comptroller, we should go beyond our jurisdiction, and our declaration would be inoperative. There may well be a diversity of opinion as to the true construction of the last clause of the section; but it can only be settled when the money shall be in the treasury, and the comptroller shall be called upon to act. Perhaps by that time an explanatory act will have been passed, which, if prepared with more care and greater skill than this, and with more regard to precision in the use of words, will relieve the comptroller, as well as the courts, from the necessity of spelling

out the legislative intention, which is always difficult to do from acts unartificially drawn.

The order should be affirmed, without costs.

SUTHERLAND, P. J.—Concurs. .

BONNEY, J.—I concur with a majority of the court in opinion that the act of April 17, 1860, imposes upon the supervisors *the duty* of raising and collecting *not* exceeding $80,000, to pay whatever sum may be found due to the contractors, with the Commissioners of Records, and that the constitutionality of the act for the appointment of said commissioners, passed April 13, 1855, cannot on this application be questioned.

But to authorize the interference of this court by writ of mandamus, as I understand the law, the relators must show a demand or request to perform the imposed duty, *and a refusal by the supervisors to comply therewith,* either by express words, or by such words and acts as satisfy the court that for some insufficient reason compliance is withheld, and a determination evinced not to do what is required. I think the papers in this matter show a sufficient request, but I am not satisfied with the evidence of refusal. (See *Tapping's Mandamus,* 282, &c., and cases cited.)

Again, the act of April, 1860, section 6, as I construe it, vests in the supervisors, and not in this court, the power to determine in advance, what amount, not exceeding eighty thousand dollars, will be sufficient to pay the sums which "*may be found due*" to said contractors; and, consequently, in my opinion, the mandamus (if granted) should command the supervisors to perform the duty required of them, and raise such amount as they shall determine to be sufficient for the purpose specified.