The People ex rel. The Otsego County Bank, Respondent, *v.* The Board of Supervisors of Otsego County, Appellant.

Where a statute provides for the doing of an act for the sake of justice, or where it clothes a public body or officer with power to do an act which concerns the public interests or the rights of individuals, though the language of the statute be permissive merely, it will be construed as imperative, and the execution of the power may be insisted upon as a duty.

The provision of the act providing for relief against illegal taxation (§ 1, chap. 938, Laws of 1867), authorizing and empowering the boards of supervisors of certain counties therein named to hear and determine claims for illegal assessments upon United States securities and to repay the amount collected upon such assessments, is mandatory. Upon the presentation of a claim thereunder, the only questions to be determined by the board, and in reference to which it has any discretion, are whether the claimant has such a claim, and if so, the amount thereof. When the fact of the existence of the claim is undisputed, the board has no authority to reject it as illegal, and it can be compelled by mandamus to exercise its discretion upon the facts and the amount of the allowance.

The relator showed that it owned and was assessed upon United States stocks; that it paid the taxes claimed, and properly presented its claims therefor under said statute to defendant. These facts were not disputed. Defendant adopted a resolution, in substance, that the claim was invalid, and that the same be disallowed. *Held,* that a mandamus directing defendant to hear the claims of relator and to determine whether it paid the taxes, as stated, and if so, to audit and allow the amount thereof, and cause the same to be levied and collected, as prescribed by said statute, was proper.

(Argued September 25, 1872; decided January term, 1873.)

Appeal from an order of the General term of the Supreme Court in the sixth judicial district, reversing an order of the Special Term and granting a peremptory mandamus against the defendant.

In the year 1863, the relator had, as part of its capital, $65,000 invested in the stocks of the United States, and for the assessment of that year paid upon such stocks taxes to the amount of $812.50, besides collector's fees. In the year 1864, it had, as part of its capital, $91,000 invested in stocks of the

United States, upon which it paid for the assessment of that year a tax of $6,670.30, besides collector's fees.

In November, 1867, the relator, claiming that such taxes had been unjustly paid on the ground that such stocks were exempt from taxation, applied to the defendant under the act, chapter 938 of the Laws of 1867, to have such taxes audited and allowed, as provided in said act.

The defendant refused to allow the claim, and then the relator, upon affidavits and notice of motion, applied to the Special Term of the Supreme Court for a mandamus to compel the allowance of the claims, and the court ordered that the defendant, " without delay, determine, audit and allow the said claims, and levy the amount thereof by tax, as required by said act, or show cause " at a time named.

At the time named the parties appeared, and the defendant presented an affidavit showing that relator's claims had been referred to a committee of five supervisors, and that the committee reported that they had examined the claims, and, in their opinion, the county and towns against which the claims were made could "not in justice refund the said taxes," and they reported for adoption by the board of supervisors the following resolution : " *Resolved*, That this board, having heard and examined the claims of the Otsego County Bank for the refunding of certain taxes, determine the said claims to be invalid and that the same be not allowed." The court thereupon made an order denying the application for a mandamus " on the sole ground that it appears by the said papers that the said board of supervisors have heard and determined the said claims adversely to the said relator."

Upon appeal, this order was reversed, and it was ordered that a peremptory, mandamus issue, " requiring and commanding the board of supervisors of the county of Otsego to hear the claims of the relator, presented to said board on the 13th day of November, 1867, and determine whether the relator paid the taxes as stated in said claims, and if the relator paid any such taxes, the amount thereof; and further, if the relator paid any such taxes, to audit and allow the amount thereof,

and cause the same to levied, collected and repaid to the relator, as prescribed by chapter 938 of the Laws of 1867."

*H. Sturges* for the appellant. Defendant had conferred upon it a judicial power, involving a discretion, and having proceeded to exercise it a mandamus will not lie. (*Hull* v. *Board of Supervisors of Oneida*, 19 J. R., 259, and cases cited; *People ex rel. Belden* v. *Contracting Board*, 27 N. Y., 378.) Plaintiff's remedy is by certiorari, and not by mandamus. (*People ex rel. Cook* v. *Board of Police, etc.*, 39 N. Y., 506; *People ex rel. W. R. R.* v. *Board of Assessors of Albany*, 40 N. Y., 154, and cases cited.)

*James E. Dewey* for the respondents. Where a statute directs the doing of a thing for the sake of justice, words of permission, such as "may," are always construed as mandatory where the public or third persons are interested. (*People* v. *Common Council, etc.*, 22 Barb., 412; Dwar., 604; *The King* v. *Inhabitants of Derby*, Skin., 370; *Rex* v. *Barlow*, Salkeld, 609; 14 Car. II, chap. 12; 23 H. VI; *Supervisors* v. *United States*, 4 Wall., 446; *Blackwell's Case*, 1 Vern., 153; *Mayor, etc.*, v. *Furze*, 3 Hill, 612; *People* v. *Supervisors of New York*, 11 Abb. Pr., 114; *People* v. *Haws*, 34 Barb., 69; *Galena* v. *Amey*, 5 Wall., 705; *Waller* v. *Harris*, 20 Wend., 560.) Mandamus is the proper remedy to enforce obedience to this statute. (*People* v. *Supervisors of New York*, 11 Abb. Pr., 114; *People* v. *Board of Supervisors of New York*, 32 N. Y., 473; 21 How. Pr., 322; 34 Barb., 74; *People* v. *Assessors of Barton*, 44 id., 148; *Hill* v. *Supervisors of Oneida*, 19 J. R., 259; *People* v. *Supervisors of St. Lawrence*, 30 How., 123.) Defendant's answer to the order to show cause was evasive, and entirely insufficient. (*People* v. *Supervisors of New York*, 21 How., 319, 324, 329; 37 Penn., 237, 245, 246.)

Earl, C. Prior to 1863, the taxation of banks formed under the laws of this State, was regulated by chap. 456 of

the Laws·of 1857, which provided that "the capital stock of every company, liable to taxation, except such part of it as shall have been excepted in the assessment roll or shall have been exempted by law, together with its surplus profits or reserved funds, exceeding ten per cent of its capital, after deducting the assessed value of its real estate and all shares of stock in other corporations actually owned by such company which are taxable upon their capital stock, under the laws of this State, shall be assessed at its actual value, and taxed in the same manner as the other personal and real estate of the county." Under this law the Court of Appeals held, in the *People* v. *Commissioners of Taxes and Assessments* (23 N. Y., 192), that stocks of the United States, owned by-banks, were not exempt from taxation. That case was taken by writ of error to the Supreme Court of the United States, and there the judgment was reversed (2 Black, 620); the court holding that that portion of the capital of a bank, invested in the stocks, bonds or other securities of the United States, was not liable to taxation by State authority. That decision was announced in March, 1863, and, doubtless for the purpose of avoiding the effect of it, in April, 1863, the legislature passed an act (chap. 240) which provided as follows: "All banks, etc., shall be liable to taxation on a valuation equal to the amount of their capital stock paid in or secured to be paid in, and their surplus earnings (less ten per cent of such surplus), in the manner now provided by law, deducting the value of the real estate held by any such corporation or association, and taxable as real estate." It was under this statute that the taxes in question were imposed. The courts of this State again held that the banks could be taxed "on a valuation equal to the amount of their capital stock," notwithstanding a portion of their capital stock was invested in United States stocks; but the decisions were again reversed by the Supreme Court of the United States (*Bank Tax Case*, 2 Wall., 200), that court deciding that the tax imposed under that law was still a tax upon the property of the banks, and that so much of such property as was invested

in United States stocks was exempt from taxation. That decision was not announced until after the taxes in question had been paid and collected. It follows that these taxes, although voluntarily paid, were illegally exacted, and that the relator had a just claim to have them refunded. But it, as well as other banks similarly situated, was without any remedy by which it could enforce repayment, and hence the act (chap. 938, Laws of 1867) entitled "An act providing for relief against illegal taxation" in Herkimer and other counties was passed.

The first section of the act provides that the boards of supervisors of the several counties mentioned are "authorized and empowered, upon the application of any party aggrieved, to hear and determine any claim of an assessment for taxes made in their respective counties upon United States bonds, stocks or securities, any or all of them which by law are or have been exempt from taxation, and to repay to the proper person the amount collected or paid upon such assessment." Section 3 provides that, whenever such claim shall be audited and allowed, the board of supervisors shall levy the amount thereof upon the taxable property of the county.

The first question to be determined is whether this act was merely permissive or mandatory to boards of supervisors. To determine this question, not only the language of the act, but the circumstances surrounding its passage and the object had in view, must be considered. The highest judicial authority in the land had decided that these taxes were illegally exacted. The relator, therefore, had a claim, based upon natural justice and equity, that the taxes should be refunded, and as there was no way to compel the counties to refund them this act was passed. The title of the act shows that it was to provide "relief against illegal taxation." This relief would be quite illusory if it were left to the absolute discretion of the board of supervisors of any county to refund the taxes or not, as it might see fit. The act recognizes the party who has paid these taxes as an aggrieved party, who has a claim against the county, which is to be audited and allowed like other

claims against the county.   It is not to be presumed that the
legislature intended that the counties and towns which had
the benefit of this illegal taxation should have. the option,
through their supervisors, to determine whether they would
do justice to the wronged tax-payers by refunding the taxes
illegally exacted, or not.   The purpose of the act, as well as
the simplest justice, requires that we should hold that it is
mandatory upon the respective boards of supervisors, unless
there is something in the plain language used that forbids
such a construction.   The words "authorized and empowered"
are usually words of permission merely, and generally have
that sense when used in contracts and private affairs; but when
used in statutes, they are frequently mandatory and impera-
tive.   In Dwarris, p. 604, the rule is laid down as follows:
"Words of permission shall in certain cases be obligatory.
Where a statute directs the doing of a thing for the sake of
justice, the word *may* means the same thing as the word
*shall*."

In *Rex* v. *Barlow* (2 Salk., 609) it is said that where a sta-
tute directs the doing of a thing for the sake of justice or the
public good, the word "may" is the same as the word "shall."
That was a case under 14 Car. II, ch. 12, which gave power
and authority to the church-wardens, etc., to make an assess-
ment to reimburse the constables; that statute was held to be
imperative, for the reason that both the public and the consta-
ble had an interest in having the authority exercised.

In *The King* v. *The Inhabitants of Derby* (Skinner, 370) a
motion was made to quash an indictment found against the
inhabitants "for refusing to meet and make a rate to pay a con-
stable's tax."   The ground for the motion was that the statute
was not imperative, but merely they "may meet," etc.   The
court, however, held *may*, in the case of a public officer, was
tantamount to *shall*.

In *Supervisors* v. *United States* (4 Wallace, 435) a statute
of Illinois provided that the board of supervisors "may,
if deemed advisable, levy a special tax," etc.   This language
was held to be peremptory, and not merely permissive.

Mr. Justice Swayne sums up the authorities on the question as follows: "The conclusion to be deduced from the authorities is that where power is given to public officers in the language of the act before us, or in equivalent language, whenever the public interest or individual rights call for its exercise, the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person, the law requires shall be done. The power is given not for their benefit, but for his. It is placed with the depositary to meet the demands of right and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless."

In *The City of Galena* v. *Amy* (5 Wallace, 705), where an act amending a city charter said that the city council "may, if it believe that the public good and the best interests of the city require" it, levy a tax to pay its funded debt, it was held a mandamus would lie, at the suit of a judgment creditor, to make it levy the tax.

In *The Mayor, etc., of the City of New York* v. *Furze* (3 Hill, 612) Chief Justice Nelson, after citing and commenting on many cases, laid down the rule as follows: "Where a public body or officer has been clothed by statute with power to do an act which concerns the public interest or the rights of third persons, the execution of the power may be insisted on as a duty, though the phraseology of the statute be permissive merely and not peremptory."

These authorities are abundant to show that the language used in the act under consideration must be construed to be imperative, and that the board of supervisors was commanded to hear and determine, audit and allow the relator's claim, and cause the taxes illegally paid to be refunded.

But it is claimed, on the part of the appellant, that it has done all it can be compelled to do by mandamus; that it has heard the relator's claim and determined it adversely to him. It is true that boards of supervisors have a certain judicial discretion to exercise in reference to claims presented to them, which cannot be controlled by mandamus. They are to

investigate and determine the facts as to any disputed claim; and if it is unliquidated, they are to determine the amount to be paid. But the law is supposed to be plain, and they are presumed to understand it, and they have no right to reject a claim as illegal which the law plainly requires them to allow. If they do, they can be compelled to—the allowance by mandamus. (*The People* v. *Supervisors of N. Y.*, 11 Abb. Pr., 114; *People* v. *Board of Supervisors of N. Y.*, 32 N. Y., 473; *People* v. *Supervisors of N. Y.*, 21 How. Pr., 322; *People* v. *Supervisors of St. Lawrence*, 30 id., 178; *Hill* v. *Supervisors of Oneida*, 19 John., 259; *People* v. *Supervisors of N. Y.*, 1 Hill, 362.) Where supervisors refuse to audit and allow a legal claim on the ground that it is illegal, they do not exercise the discretion which the law vests in them; and hence, in such case, they can be compelled by mandamus to exercise their discretion upon the facts and the amount to be allowed.

Now, let us see what was done in this case. The relator, in the affidavits upon which the order to show cause was based, showed clearly and particularly that it owned the United States stocks, that it was assessed upon them and paid the taxes claimed. These facts showed that it had a claim which, under the special act of 1867, the board of supervisors was imperatively bound to audit and allow. Whether these facts were true or not, the board of supervisors was bound to determine; and if it found the facts to be true, then it had no discretion left, and was bound to cause the money paid to be refunded. These facts were not disputed. When the claim was presented, it was referred to a committee. It does not appear that the committee or the board of supervisors made any investigation whatever of the facts pertaining to the claim, although the statutes furnish ample power to make such investigation. (Laws of 1845, chap. 180; Laws of 1858, chap. 190.) The committee in their report speak of the taxes as "collected and paid," and state that the county and towns "cannot, in justice, refund the said taxes," thus substantially admitting that the taxes had been paid as claimed. They do

not report that they have examined and inquired into the facts, or that any of the statements contained in the affidavit of the claimant were untrue. They simply report that they have examined the claims, and that it would be unjust for the county and towns to refund the taxes. Then the board of supervisors adopted a resolution, reported by the committee, that the claim was invalid, and that the same be disallowed. There was no determination by the board of supervisors that the relator was not assessed just as alleged, and that it did not pay the taxes just as claimed by it. The claim was evidently rejected simply because it was unjust and illegal. The legislature had determined that the claim for taxes illegally exacted, as mentioned in the act, was both just and legal; and the only questions to be determined by the board of supervisors, in reference to which it had any discretion, were, whether the claimant had such claims and the amount of them. This case is, therefore, brought within the rule laid down in *Hill* v. *Supervisors of Oneida* (*supra*): "Where the supervisors of a county refuse to allow a claim for services as a county charge, this court, if it be a legal charge, may instruct and guide the supervisors in the execution of their duty by a writ of *mandamus*, and compel them to admit the claim as a county charge."

It is claimed, however, that the mandamus which the General Term ordered to be issued will interfere with the discretion of the board of supervisors. This is not so. It will direct it to determine whether the relator paid the taxes claimed and the amount of them. So far as we can perceive, there was nothing else upon which the board of supervisors could exercise its discretion. It is useless to imagine whether there might not be some conceivable defence to the claims, although it should appear that the relator had paid the taxes just as claimed by it. It is sufficient that no defence was suggested upon any of the papers before the

court, and the writ ordered by the General Term was the proper one upon the facts as they appeared before it.

I am, therefore, of the opinion that the order should be affirmed, with costs.

All concur.

Order affirmed.