PEOPLE ex rel. REYNOLDS v. COMMON COUNCIL OF CITY OF BUFFALO.

(Superior Court of Buffalo, General Term.  December 21, 1892.)

1. EMINENT DOMAIN—REMEDIAL ACT—CONSTRUCTION—PERMISSIVE WORDS.

Laws 1890, c. 393, declaring that the common council of Buffalo is "authorized" to audit and adjust the amount of damage done to certain private property by the opening of a street, and providing that, on the appraisal of such damage, the city shall raise the same by assessment, and pay it over to the owner of the property, is mandatory.  21 N. Y. Supp. 598, affirmed.

2. SAME—AUDIT OF CLAIM—MANDAMUS.

Though the act provides that the expense of the proceeding to appraise the damage to the property shall be included in the amount of such damages to be raised by the assessment, the fact that the order of the court approving the report of the appraising officers, fixing the amount of damages, does not include such expenses, is no defense to an application for a writ of mandamus to compel the common council to audit and adjust the claim, it appearing that the city has paid such expenses out of the general fund, as authorized by a later statute.

3. SAME—APPRAISAL—REPORT OF COMMISSIONERS.

Though the act only authorizes the commissioners to appraise the damages, after which the common council is to audit and adjust the same, the fact that in their report they say that they "make an award" to the person for damages to her property is immaterial, as the statute awards the amount of the damages appraised, by directing that, when raised by assessment, it shall be paid to her.

4. SAME—REPEAL OF LAW.

Where, under an act (Laws 1890, c. 393) directing a city to audit and adjust the amount of damage done to certain private property by the opening of a street, providing for an appraisal thereof by commissioners, and requiring the city to raise the amount by assessment, and pay it over to the owner of the property, the commissioners have made the appraisal, and their report has been confirmed by the court, the owner's claim against the city becomes fixed, and cannot be affected by a subsequent repeal of the act, (Laws 1891, c. 42.)  21 N. Y. Supp. 598, affirmed.

5. RES ADJUDICATA—ON SECOND APPEAL.

Where, on appeal from an order denying a stay of the proceedings of commissioners appointed to appraise the damages to certain private property from the opening of a street by a city, under an act authorizing such appraisal, and directing the common council to audit and adjust the claim, and raise the same by assessment, to be paid to the owner of the property, it is decided that the proceedings of the commissioners are regular, that the act is valid, and within the power of the legislature, and that a certain contract between the city and such owner does not estop him, such questions are res adjudicata, and not open for consideration on a subsequent appeal from an order granting a writ of mandamus to compel the common council to audit the amount of damages awarded by the commissioners.  White, J., dissenting.

Appeal from special term.

Application by Amelia E. Reynolds for a peremptory writ of mandamus to compel the common council of the city of Buffalo to audit and adjust a claim in favor of relator against the city, under Laws 1890, c. 393.  The writ was granted, (21 N. Y. Supp. 598,) and respondent appeals.  Affirmed.

For a more particular statement of the facts and the provisions of the act of 1890, see 21 N. Y. Supp. 592.

Argued before TITUS, C. J., and WHITE, J.

George M. Browne, for appellant.

Daniel McIntosh and O. O. Cottle, for respondent.

TITUS, C. J. This proceeding is instituted under chapter 393 of the Laws of 1890, authorizing the city of Buffalo to audit and adjust the amount of damage which has been occasioned to the property of Amelia E. Reynolds. In 1885 certain proceedings were instituted by the city of Buffalo to take lands necessary to extend Elmwood avenue from Buffalo street to North street. The land of the respondent adjoined property through which the street passed. On this land was a large double house, a part of which was on the property taken, and the other part on the land of the respondent. No portion of the property of the respondent was taken in opening Elmwood avenue; but, in removing the portion of the building on the land taken by the city for the improvement, great damage was done to the portion of the house on the respondent's land. The commissioners in that proceeding did not award the respondent damages, because none of her property was taken, and no authority was found to authorize an award to her. The legislature then passed an act (chapter 393 of the Laws of 1890) under which the present proceeding was taken. Commissioners were appointed by the court, as provided by the act, to appraise the damage to respondent's property. They made their report, and awarded her $5,500. The report was confirmed by the court on the 10th day of February, 1891. On the 3d day of March, 1891, and before the common council had audited and adjusted her claim, the legislature repealed the act of May, 1890, (chapter 42 of the Laws of 1891.) An application for a peremptory writ of mandamus was made at a special term of this court, which was granted, commanding the common council to audit and adjust the amount of damages occasioned to the property of the respondent at $5,500, the sum fixed by the commissioners in their report, and to raise the same by assessment upon the property benefited by the opening of Elmwood avenue. 21 N. Y. Supp. 598. An appeal by the common council from that order brings before us the questions we are to consider.

Before the passage of the act of 1890, Mrs. Reynolds had entered into an agreement with the city of Buffalo, in consideration of the sale to her of the building upon the property taken in opening the street, to release the city from all damages which her property had sustained by reason of the opening of the street and the tearing down of one half of the building. An appeal was taken to this court (21 N. Y. Supp. 598) from an order (Id. 592) denying a stay of the proceedings of the commissioners appointed to award damages to the respondent, and many of the questions here raised were passed upon adversely to the city on that appeal,— among them, the regularity of the proceedings, and the validity of the statute under which they were instituted, (chapter 393 of the Laws of 1890,) and the right of the legislature to authorize the city to pay the respondent whatever sum she was equitably entitled to, the force and effect of the contract made by Mrs. Reynolds with the city, namely, that it did not estop her from claiming damages under that act, but that, if she had received anything under the agreement with the city, it must be allowed in reduction of any award of damages to her. It appears from their report that the commissioners did take the agreement into consideration, and credit the city on such award with the value of the

materials which she had received under her contract. So far as these questions are concerned, this court has passed upon them, and they must now be considered res adjudicata, and not open for further consideration, at least here. Culross v. Gibbons, 130 N. Y. 447, 29 N. E. Rep. 839.

The learned counsel for the defendant claims that the act of 1890, c. 393, is permissive, and not mandatory. The language used in the act is not different from that used in the many cases where this question has been before the courts. In People v. Board of Sup'rs of Livingston Co., 68 N. Y. 114, the same language was used by the legislature, and the court held it was mandatory. Judge Earl, in his opinion, said, "Where the public interest or private right requires that the thing shall be done, then the word 'may' is generally constructed as 'shall;'" and a peremptory writ of mandamus was ordered. In People v. Board of Sup'rs of Otsego Co., 36 How. Pr. 1, it was held that, where the legislature authorized and empowered the board of supervisors to cause taxes illegally assessed and paid to the county to be repaid, it became their duty to do it; and a peremptory writ of mandamus was ordered. On appeal to the court of appeals, (51 N. Y. 401,) the court held that the statute was mandatory; the court saying that the words "authorized and empowered" are mandatory, when the statute directs the doing of a thing. Many other cases have been examined, but enough have been cited to illustrate the rule that, where a party has a claim based upon natural justice and equity, permissive words in a statute are construed so as to accomplish what the legislature intended.

The counsel for the appellant claims that the statute requires the expense of the proceeding to appraise such damages to be included in the amount of damage to be raised by local assessment, and the order only requires the common council to raise the amount of damage, not including the expense of the proceeding; that the common council is without power to comply with the order, the only authority being the statute in question. It is perhaps a sufficient answer to this that chapter 42 of the Laws of 1891, which is the act repealing chapter 393 of the Laws of 1890, provided that the commissioners appointed under the act repealed should be paid by the city out of the general fund, and it appears that the expense of the proceeding was paid by the city without waiting to include it in the amount of damage to be raised. No reason can be assigned why the city may not include the expense of the proceeding in the amount of damage to be assessed, and reimburse the general fund out of which it was paid, unless it be the act of 1891, above referred to. Certainly, nothing in the order forbids it; and, if the charter authorizes it, it may well be included in the amount to be raised. I do not think it is material, as affecting the powers of the common council to comply with the mandamus. By the act of 1890, the city was to audit and adjust the amount of damages to the respondent's property, after the amount of such damage had been appraised; and the claim of the counsel for the appellant that the commissioners had no authority to "make an award" to her for damages to her property is, it seems to me, without force. The statute contemplates an appraisal of her damage, and the fact that,

in their report, they say they "make an award for damages to her property," adds nothing to the force of the statute, as the statute "awards" the amount of damage appraised to her, and, when the common council have appraised the damage, the statute directs to whom it shall be paid.

The principal claim made by the appellant is that the act of 1890 has been repealed, and therefore there is no law authorizing or requiring the common council to audit and adjust the damages. The counsel's reasoning seems to rest upon the assumption that the respondent has no claim which she can enforce after the statute has been repealed. In this I think he is mistaken. It is not claimed that if this was an award by commissioners in eminent domain proceedings, and confirmed by the court, it would not then be a valid claim against the city, and have the force and conclusiveness of a judgment, with all of its incidents, including that of contract. Mayer v. Mayor, etc., 101 N. Y. 284, 4 N. E. Rep. 336.

But it is insisted that these are not eminent domain proceedings, and consequently no such character or force attaches to the award of the commissioners. While it is not a proceeding directed against the property of another for a public purpose, the statute clothed it with the character of such a proceeding, and when the report was confirmed by the court its character was not changed. It had ripened from its equitable nature into a legal and valid claim against the city. The respondent's damages had been ascertained and fixed; it was then enforceable against the city, and, under the authorities, it is difficult to see how the legislature could divest her of the claim. People v. Board of Sup'rs of Westchester Co., 4 Barb. 64; In re Com'rs of Washington Park, 56 N. Y. 144; In re Rhinebeck & C. R. Co., 67 N. Y. 242.

I do not think it necessary to refer to the statute of 1890 for authority to pay the claim, assuming it to be a valid and legal claim, after the report was confirmed. Section 15 of the revised charter provides that "the common council shall audit all claims against the city of Buffalo." A like provision is found in the old charter, and it confers upon that body power to audit all claims. This is a liquidated claim. Nothing is to be done in addition to what has already been done to fix the amount. It has been determined in the manner directed by law, and the power conferred upon the common council is ample, in the absence of the statute of 1890, to audit and adjust it. The right is clear, and the amount is not in dispute. Therefore, I think the remedy by mandamus to enforce its payment is proper. It is damage occasioned by a local improvement, and should properly be assessed upon the property benefited by the improvement. The order appealed from should be affirmed, with $10 costs and disbursements.

WHITE, J., (dissenting.) In 1885 the city of Buffalo instituted proceedings in eminent domain to acquire the title to lands for a public street. At that time, it may be assumed, the relator was the owner in fee of a parcel of land situated on the north side of North street, and that George C. Greene was the owner of a parcel of land adjoining that of the

relator on the east.    These parcels of land were 312 feet deep, with a frontage of about 88 feet on North street.    Prior to 1885, and before the eminent domain proceedings had been instituted, there had been erected a large and costly brick double house, covering the North street front of the lands of said Greene and the relator, the partition wall of which was the division line between said lands, and which was some three-feet west of, and parallel to, the street to be opened, and called "Elmwood Avenue."    The title to the lands necessary for the street was acquired by the city, and it proceeded to and did demolish the easterly half of this house, leaving the title to said three-foot strip in said Greene.    The demolition and removal of the easterly half of this house necessarily greatly damaged and impaired the value of the remaining half of the house, which stood on the land of the relator.    The relator appeared, and took part in the proceedings in eminent domain, and claimed that she was entitled to have an award made to her in those proceedings for the damages which she had sustained.    The claim was disallowed on the ground that her property did not abut upon the street to be opened and none of her property had been taken by the city for the proposed improvement, and this determination was acquiesced in by all parties. The proceedings in eminent domain were concluded by final determination on the 11th day of May, 1886.    On August 9, 1886, the city requested the legislature to pass a law authorizing it to make just compensation for the injury which had been inflicted upon the relator.    Afterwards, and on July 28, 1887, the relator and the city entered into an agreement in writing, and under seal, whereby, among other things, the city conveyed and delivered to her a lot of building material, sidewalks, trees, and other property, to which it had acquired the title from said Greene in said eminent domain proceedings; and in consideration of such conveyance and delivery, the relator covenanted and agreed that she would, and thereby did, relinquish all claim against the city which she had or claimed to have or hold, or which she might thereafter have, or which might accrue to her, by reason of any injury or damage that might result to her premises in consequence, or as the result, of the opening of said street, and by which she released and acquitted the city from the payment to her of any claim for damages that might accrue as aforesaid; and the relator further covenanted and agreed that she would and did thereby waive, relinquish, abandon, and withdraw all objections to, and rights and claims which she had or might have in consequence of any irregularity, illegality, or invalidity of, the assessment made or levied against her upon her lands and premises for the payment of any awards or expenses in the said proceedings in eminent domain, or the assessment roll in connection therewith, and that she would take no proceedings to annul or invalidate the same.    The relator thereupon, in pursuance of said contract, took and received the property so conveyed to her by the city, and no attempt has ever been made to abrogate or rescind that contract.    On May 21, 1890, the legislature passed an act authorizing the city to audit and adjust the amount of damages sustained by the relator in consequence of the opening of the street in question, and directing that when ascertained, as provided by the act, the amount

should be raised by assessment upon the property deemed to have been benefited by the opening of the street. The method of procedure prescribed by this act was by three commissioners, to be appointed by the court. Commissioners were thereupon appointed, who reported to the court on the 2d day of February, 1891, appraising the damages at $5,500, and on the 10th day of February, 1891, the report was approved by the court. Before these commissioners reported, but after they had taken evidence as to the merits of the claim of the relator, on a motion by the city for a stay of proceedings, the fact of the making of the contract of July 28, 1887, was called to the attention of the court; and it ordered that, unless the commissioners should be authorized by the relator to deduct from the amount of any damage which the relator might have sustained the value of the property received by her under that contract, the motion for a stay should be granted. The relator consented to the conditions imposed, and the motion for a stay was denied. An appeal from the order denying the motion was taken to the general term, where it was affirmed. 21 N. Y. Supp. 598. On September 21, 1891, the relator requested the city to audit the claim made by her, and take the steps requisite to insure its payment, which the city refused to do. Thereupon this proceeding was instituted by an alternative writ of mandamus, requiring the common council to audit and adjust the claim of the relator, and proceed to raise the amount by assessment, etc., or show cause to the contrary. The return to the writ alleges, substantially, the facts as hereinbefore recited. There was no traverse by the relator to the return.

I have read with much care and profit the opinion of Ex-Judge Beckwith, (21 N. Y. Supp. 592,) which was written on the motion made by the city of Buffalo in January, 1891, for a stay of proceedings in this case, to enable the city to procure a repeal of the act of the legislature of May 21, 1890, on the ground that the existence of the contract between the relator and the city, of July 28, 1887, was not before known to the corporation counsel who made the motion, the contract having been made under the directions of his predecessor in office. I have also read the learned opinion of Judge Hatch, (21 N. Y. Supp. 598,) written upon the trial of the issues raised by the writ of mandamus, and the return thereto. It is claimed by the respondent that the decision of the general term of this court, which affirmed the order denying the motion of the city for a stay of proceedings, is res adjudicata as to the power of the legislature to pass the act of May 21, 1890, and to the effect that the contract of July 28, 1887, did not estop the relator from enforcing her claim under that act of the legislature. The record which was before the general term when that decision was made is not now before us; but it is evident from the opinion of Judge Beckwith, which is published in the report of the case in 21 N. Y. Supp. 592, that, in the affidavits read on the motion for a stay of proceedings, claims were made by the relator and the city for and against the validity of the contract of July 28, 1887, and that the parties ought to have the privilege of trying that question upon its merits. The failure of the relator to traverse the return to the writ of mandamus left the allegations of the return upon that sub_

ject undisputed, and therefore to be taken as true, for the purposes of the trial of the issues. No claim was thereafter made by the relator, on the trial of the issue, that she was entitled to any relief against her contract of July 28, 1887, or that she had executed or performed said contract under or by reason of any fraud, misrepresentation, or mistake. The facts, as disclosed by the record on the appeal from the order denying the motion for a stay, may have differed from those disclosed by the record on this appeal in other respects. But, even if the decision of our former general term upon the appeal from the order denying the motion for a stay of proceedings were based upon a record substantially the same as the one before us, yet we are not thereby prevented from reconsidering the case upon its merits, and, if need be, reversing or modifying that decision. The doctrine of stare decisis is never applied, so as to prevent a court from reconsidering, reversing, or modifying its own decision, if deemed contrary to principle, where it will not affect transactions entered into, nor titles to property or property rights acquired, upon the faith of the erroneous decision. The force of the doctrine is measured somewhat by the nature of the question decided. There can be no doubt that the court should exercise great care and caution in reconsidering a question once decided by it upon the merits, but when convinced that it has made an erroneous decision, which can be corrected without material injury to any one, it is the duty of the court to make the correction. The rule which I think is applicable to the case before us is stated in the celebrated Legal Tender Cases, reported in 12 Wall. 457, in the opinion by Mr. Justice Story, of the United States supreme court, in the following language:

"In cases involving only private rights, if convinced we had made a mistake, we would hear another argument, and correct our error."

Or, as Judge Smith says in the case of Olcott v. Railroad Co., 26 Barb. 157:

"The 3,000 cases overruled, doubted, or limited in their application, mentioned in Greenleaf's Overruled Cases, indicate that the tendency to assert and carry out what is supposed to be the right in point of principle is much greater than that of abiding by precedents and of adhering to decisions."

Although this case was reversed on other points by the court of appeals, the language quoted as to the doctrine of stare decisis was approved. The status of the case at bar is so radically different from that which, in my opinion, it ought to be, that I am impelled, with deference and respect for the former decision of the court, and at the risk of being charged with temerity, to a discussion of the matter upon its merits.

In the proceedings in eminent domain for opening Elmwood avenue, it was claimed by the city that none of the relator's property was taken, and that, therefore, she was not entitled to an award for the damages sustained by her. Whether or not property of the relator was taken, within the spirit and true intent of the constitution, which prohibits the taking of private property for public use without just compensation, is not now open for consideration, because the relator, in those eminent domain proceedings, acquiesced in the claim made by the city on that

subject. The final determination in those proceedings adjudicated to that effect, with her consent, and therefore and thereby she was forever debarred from demanding any compensation at the hands of the city for the damages which she claims to have sustained, as a legal or equitable claim, recognized by or enforceable at law or in equity. Such final determination in the eminent domain proceedings, made with the consent of the relator, placed her in the category of owners of property taken for public streets, to whom is applicable the language of the court of appeals in the case of Radcliff's Ex'rs v. Mayor, etc., of Brooklyn, reported in 4 N. Y., at page 195, as follows: .

"The opening of a street in a city is not necessarily an injury to the adjoining landowners. On the contrary, it is, in almost every instance, a benefit to them. In some instances, the landowner will suffer a heavy loss; and this case may, perhaps, be one of the number. But it is damnum absque injuria, and the owner must bear it."

If now it be true that at the time of the passage by the legislature of the act of May 21, 1890, the relator had no claim which either the law or equity would recognize or enforce, and it had been so adjudged by the final determination in the eminent domain proceedings, the act in question is void, because it, in effect, creates, or authorizes the creation of, a claim in favor of the relator against the city, and its enforcement, for a cause which had theretofore been adjudged insufficient for that purpose by due process of law, and for a cause which the courts have condemned times without number. The final determination of the eminent domain proceedings was, in effect, a judgment, and finally fixed and determined the rights of all the parties thereto, including the relator; and that is the reason why the act of March 3, 1891, repealing the act of May 21, 1890, could not be invoked by the city as authority for divesting the relator of the rights supposed to have been secured by her judgment under the last-named act. See authorities cited by Judge Hatch, 21 N. Y. Supp. 598. And by virtue of that determination the rights of the city became vested, so far as the lands taken by it for Emwood avenue are concerned, and so far as its acts in that behalf, in removing the easterly half of the double house, which caused the damage to the relator, are concerned. As to the city, the act of May 21, 1890, was clearly retrospective, and designed to impose upon it a liability not recognized or enforceable at law or in equity, and a liability which, by the final determination in the eminent domain proceedings, had been adjudged, by due process of law, not only not to exist, but incapable of being lawfully created out of the then existing state of things. Statutes which take away or impair vested rights, acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability, in respect of transactions or considerations already passed, should be deemed retrospective and void. People v. Supervisors, etc., 4 Barb. 64; Salters v. Tobias, 3 Paige, 338; Koshkonong v. Burton, 104 U. S. 668; Westervelt v. Gregg, 12 N. Y. 202. A statute which operates to annul or set aside a judgment of a court of competent jurisdiction, and to disturb or defeat rights thus vested, is void, and the rule holds good where the matter or thing concerns the public.

Mills v. Charleton, 29 Wis. 400. However eminent may be the authority of the legislature, it is regulated in its exercise by these well-settled principles of law, common to the whole state, and the people, whose sovereignty is supreme. The case here is not like those in which it has been held—and properly, too—that the legislature may enact remedial laws, whereby new remedies for existing rights are created, where no vested rights are impaired. It is not competent for the legislature to adjudicate in a particular case, prescribe a rule contrary to the general law, and order its enforcement; and so, if it shall be claimed that the act of May 21, 1890, assumes the existence of a claim in favor of the relator against the city, which in fact appears to be the inference from the language used, the act is void, as an attempt on the part of the legislature to create a claim condemned by the law.

In his opinion, hereinbefore referred to, and which was adopted as the law of the case by our general term on appeal from the order denying the motion of the city for a stay of proceedings, Judge Beckwith says there is no moral reason why the relator should not be made good for any loss she has sustained for a public object, and that, whatever technical objections may be raised in a court of law, there is no moral or legal argument that ought to prevent the legislature from providing for all that justice requires in her case, and that there is no doubt of the power of the legislature to require the city to make her just compensation for the damages she sustained; and the learned judge cites as authorities for these propositions the cases of Town of Guilford v. Supervisors, 13 N. Y. 143; Sinton v. Ashbury, 41 Cal. 530; Borough of Dunmore's Appeal, 52 Pa. St. 374; People v. Flagg, 46 N. Y. 401. The story of the case of Guilford v. Supervisors is as follows: In 1838, three residents of the town of Guilford, in Chenango county, named Cornell, Clark, and Humphrey, were elected commissioners of highways of the town. It does not appear what became of Humphrey, and it is not important to ascertain, for our purposes. It was claimed by the town of Guilford that at some time prior to October, 1838, the Butternuts & Oxford Turnpike Company had wrongfully taken possession of a public highway and bridge located within the town. The town, at one of its meetings, directed or authorized Cornell and Clark to sue the turnpike company for its alleged wrongful act in taking possession of the bridge. The suit was prosecuted by Cornell and Clark as such highway commissioners, and they were finally beaten, on the ground that the suit should have been brought in the name of the town, instead of in their names as commissioners, and they were compelled to pay, out of their own pockets, the costs and expenses of litigation. The town then refused to reimburse them for these costs and expenses. Thereupon, Cornell and Clark sued the town, and were beaten, on the ground that the town, as such, had no authority, in law, to authorize the suit against the turnpike company as it was prosecuted, (i. e. in the names of Cornell and Clark, as commissioners,) and consequently no legal liability on the part of the town had been incurred. Cornell and Clark then procured the passage of a statute by the legislature providing that the question of their reimbursement should be sub-

mitted to the electors of the town, and that their decision should be final. The electors rejected the claim, and thereafter the legislature repealed the above-mentioned statute, and enacted another statute, requiring the county judge of Chenango county to appoint three commissioners, whose duty it should be to take proof and determine the amount of costs and expenses that had been incurred by Cornell and Clark in the suit against the turnpike, and requiring the board of supervisors of Chenango county to proceed to collect the amount by levying the same upon the taxable property. The claim of Cornell and Clark, it will be seen, was just and valid, and its rejection by the town was evidence of bad faith towards them. That case is not analogous to one before us, because in that case the town was equitably bound to make good the expense it had authorized to be incurred. In the case before us the claim is one condemned by the law. The case of People v. Flagg decides that the power of the legislature of the state to impose taxes upon its citizens, and to dispose of public moneys, is absolute and supreme, within its legitimate sphere. But neither of the cases cited, nor any other that I have been able to find, holds, where a private individual prefers a claim which both law and equity hold to be invalid and uncollectible, and such claim is rejected, the legislature may step in, and by statute enforce its acknowledgment and collection. Moreover, conceding the power of the legislature to appropriate public moneys to objects of charity, and for all manner of purposes deemed beneficial to the whole people of the state it cannot, in my opinion, raise the moneys for such appropriations by a tax upon any one class of citizens, as distinguished from other owners of taxable property in the city, for the sole benefit of another individual or class, to satisfy claims not only not recognized as valid, but condemned by the law of the land; and that is precisely what the act of May 21, 1890, seeks to do. The claim of the relator is not one legally or equitably arising out of the opening of Elmwood avenue. The statute attempts to make it one, and by providing that the tax necessary to meet and satisfy it shall be levied upon the property deemed benefited by the opening of Elmwood avenue. Such would be "class legislation," in the offensive sense of the term, and is condemned by the letter and spirit of our laws. Further, still, the act of May 21, 1890, if enforced, certainly destroyed the agreement between the parties of July 28, 1887, and that is not permissible to the legislature. If the legislative power contended for by the relator exists, then, at any time after a municipal corporation may have paid its creditor for property or services all that it agreed to pay, and after it had in good faith performed its contract in that behalf, without any claim of fraud or mistake, and without questioning the integrity of the contract which has been performed, the legislature may, by statute, compel the payment of more, if, in the opinion of a special tribunal created by the same statute for the purpose of determining the question, the creditor received an inadequate price for his property or services under and by virtue of his contract. In my judgment, no such principle has ever found, or will ever find, lodgment, as a rule of law, in the jurisprudence of this state. The disposition of parties to disregard, repudiate, or vio-

late contracts, when entered into with all the solemnity known to the law, and after enjoying the fruits thereof, should not be encouraged by the courts, even as against a municipal corporation.

This is an appeal from the order and judgment entered on September 26, 1892, which, in substance, commands the common council of the city of Buffalo to recognize the claim of the relator as valid, and to proceed with its collection and payment over, as required by the act of May 21, 1890. There is no notice of appeal from the order, which, in form, confirms the report of the commissioners appointed under the act of 1890. The question must now be met as to whether we are at liberty to consider and dispose of the matter upon its merits, as to the validity of the statute, or the claim made by the relator under it, in the absence of an appeal from the final determination of the court in confirming the report of the commissioners on February 10, 1891. If the statute and the claim are valid, that determination is, in effect, a judgment, which can only be reviewed by an appeal or motion to vacate it. But if, as it seems to me is the case, the statute was void, for the reason herein given, all proceedings under it were and are likewise void, because the modes of judicial procedure prescribed by law for the prosecution of a right or for the redress of a wrong are not applicable to such a case. The statute, the claim, and the proceedings which have been had upon them, are unique, and are governed only by the terms of the statute itself. Without elaborating or discussing authorities for this contention, it must be sufficient to say that where a party is compelled to appeal to the courts for active and affirmative assistance to enforce, by the infliction of punishment, if found necessary, the acknowledgment and payment of a claim condemned by law, but which the legislature has attempted to create by statute, the court should refuse such assistance, even if, by reason of the inadvertence or mistake of the parties, the strict forms prescribed by law and practice for reviewing judicial decisions have not been complied with. The order and judgment of September 26, 1892, should be reversed, with costs.